# Friend's Estate.

*Will—Provision against contest—Forfeiture of legacy.*

A provision in a will declaring the forfeiture of a legacy if the legatee contests the validity of the will is valid, but the penalty of forfeiture will not be imposed where it clearly appears that the contest to have the will set aside was justified under the circumstances, and was not the mere vexatious act of a disappointed child or next of kin. If it is doubtful whether there was probable cause for the contest, the will of the testator should be regarded as supreme, and his directions to forfeit carried out. In determining whether there was probable cause or not, the court will not be bound by the decree sustaining the will entered after a hearing of both sides, but will consider the information which the contestant had before the litigation begun, and upon which he acted. The testimony of an attorney that he advised a contest has no weight in itself in determining the question of probable cause.

MITCHELL, C. J., and POTTER, J., dissent.

Argued Oct. 28, 1903. Reargued, April 26, 1904. Appeal, by James W. Friend and Harry T. Friend, from decree of O. C. Allegheny Co., Sept. T., 1902, No. 96, dismissing exceptions to adjudication in estate of Rebecca Jane Friend, deceased. Before MITCHELL, C. J., DEAN, BROWN, MESTREZAT and THOMPSON, on reargument. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*J. S. Ferguson*, with him *E. G. Ferguson* and *Reed, Smith, Shaw & Beal*, for appellants.—When a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions of his will, the courts wisely hold that no legatee shall without compliance with that condition receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes : Smithsonian Institute v. Meech, 169 U. S. 398 (18 Sup. Ct. Repr. 396); Cooke v. Turner, 15 Sim. 611; McElfresh v. Schley, 2 Gill, 181; Stewart's Case, 5 N. Y. Supp. 32; Thompson v. Gaut, 82 Tenn. 310; Bradford v. Bradford, 19 Ohio St. 546.

The advice of counsel is only evidence of care and prudence,

and in proper cases negatives malice or negligence : McClafferty v. Philp, 151 Pa. 86 ; McCarthy v. De Armit, 99 Pa. 63.

*H. K. Siebeneck*, of *Seymour, Patterson & Siebeneck*, for P. C. Friend, appellee.—Clauses of forfeiture for will contest are inoperative when there is probable cause of litigation : Jackson v. Westerfield, 61 Howard Pr. Rep. 399 ; Powell v. Morgan, 2 Vern. 90 ; Morris v. Burroughs, 1 Atk. 399 ; Loyd v. Spillet, 3 P. Williams, 344 ; Cooke v. Turner, 14 Simons, 493 ; Reilly's Est., 200 Pa. 288 ; Mentz v. Armenia Fire Ins. Co., 79 Pa. 478 ; Lynn's Estate, 48 P. L. J. 258 ; Owens's Estate, 49 P. L. J. 257 ; Adams v. Adams, L. R. 45 Chancery Div. 426 ; Lee v. Colston, 5 T. B. Munroe (Ky.), 238 ; Sackett v. Mallory, 42 Mass. 355 ; Hoit v. Hoit, 42 N. J. Eq. 388 (7 Atl. Repr. 856) ; Stapilton v. Stapilton, 1 Atk. 2.

Probable cause is generally defined to be a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense : McClafferty v. Philp, 151 Pa. 86 ; Seibert v. Price, 5 W. & S. 438 ; Lynn's Est., 48 P. L. J. 258 ; Knauss's App., 114 Pa. 10.

*William H. McClung*, of *Chantler, McGill & McClung*, for Fidelity Title and Trust Company, trustee, appellee.

OPINION BY MR. JUSTICE BROWN, June 15, 1904 :

By the second clause of her will the testatrix gave to the Fidelity Title and Trust Company, of Pittsburg, the sum of $20,000, to be held in trust for her son, Porter C. Friend. She had two other sons, James W. and Henry T. The sixth clause of her will is : " If any of my children or grandchildren, or any of the cestuis que trust under this will, shall contest the validity of this my will, or attempt to vacate the same, or alter or change any of the provisions thereof, he or she, or they, shall be thereby deprived of any beneficial interest under this will and of any share of my estate, and the share, or shares, of such person or persons, shall be divided equally between my said sons, James W. Friend and Harry T. Friend, discharged from any trust."

Porter C. Friend appealed from the decree of the register of wills admitting his mother's will to probate, and petitioned the orphans' court of Allegheny county for an issue devisavit vel

non, on the ground that his brother, James W., had procured the execution of it by undue influence. This petition was dismissed by that court, and, on appeal to us, its decree was affirmed : 'Friend's Estate, 198 Pa. 363. The appellants thereupon insisted that their brother, in view of the clause referred to in their mother's will, was not entitled to what she had left him, and now ask that the $20,000, with the accrued interest, be awarded to them. Their contention was not sustained by the court below, which, in an opinion by its learned president judge, held that as Porter C., the son, had probable cause for instituting the proceedings to contest the will, he had not forfeited the interest which his mother gave him in her estate.

It is not to be questioned that it was competent for the testatrix, possessing the absolute power to dispose of what she possessed just as she pleased, to impose the condition upon which the appellants rely in asking that their brother shall be deprived of all interest in her estate ; and it is equally clear, in view of his attempt to annul her will, that the burden is upon him to show that he now ought to have what it gives him. Such conditions to testamentary gifts and devises are universally recognized as valid, and, by some courts, enforcible without exception. The better rule, however, seems to us to be that the penalty of forfeiture of the gift or devise ought not to be imposed when it clearly appears that the contest to have the will set aside was justified under the circumstances, and was not the mere vexatious act of a disappointed child or next of kin. A different rule—an unbending one—that in no case shall an unsuccessful contestant of a will escape the penalty of forfeiture of the interest given him, would sometimes not only work manifest injustice, but accomplish results that no rational testator would ever contemplate. This is manifest from a moment's reflection and is illustrated by the class of cases to which the one now before us belongs, in which there is an allegation of undue influence which procured the execution of the will. If, as a matter of fact, undue influence is successfully exerted over one about to execute a will, that same influence will have written into it a clause which will make sure its disposition of the alleged testator's property. He who will take advantage of his power to unduly influence another in the execution of a will will artfully have a care to have inserted in it a clause to shut off all inquiry as to the influence which really made the

will; and, if the rule invoked by the appellants is to be applied with no case excepted from it, those who unscrupulously play upon the feelings of the testator may, with impunity, enjoy the fruits of their iniquity and laugh in scorn at those whom they have wronged. If the condition of forfeiture is to be enforced in every case, those who improperly influence a testator may boast to a child, against whom he discriminated, of the power they exerted over him and of what they were able to accomplish for themselves, taunting and goading on such child to a contest; and yet if, in the end, those who so invited it, and whose conduct made it justifiable, succeed in sustaining the will by retracting or denying what they said, the contestant will not only be deprived of his gift or devise, but those who drew him into the contest may acquire his portion as part of their own plunder. Would any rational testator ever contemplate such a result from a forfeiting clause in his will? Again, in illustration, a will may be admitted to probate to which there are no subscribing witnesses. Two or more of those familiar with the handwriting of the alleged testator may testify before the register that the signature attached is genuine. Subsequently information is brought to some one interested in the estate that would justify any reasonable person in believing that it was a forgery. In perfect good faith, and apparently fully justified by reliable information, a contestant of the will presents and makes out a clear prima facie case. The proponents then succeed in showing, not that the contest was not justified, but that the contestant had been deceived and imposed upon, either intentionally or otherwise, and the will is sustained. Should forfeiture be the penalty in such a case? No testator, if he could speak from his grave, would declare such to have been his intention when he wrote his will and tried to protect it from assault. What may fairly be regarded as the absurdity of holding that there can be no exception to the rule, finds illustration in the case of Cooke v. Turner, 15 Meeson & Welsby, 727. Turner, a lunatic, having been so duly found by inquisition, made a will devising real estate to his daughter, upon the condition that if she contested it, or questioned his competency to make it, or refused, on request by the executor, to ratify and confirm it, she should forfeit the interest given her. She subsequently disputed the will, on the ground of his

incompetency to dispose of his property, and ROLFE, Baron, held the condition valid in law and so certified to the lord chancellor. The court of chancery subsequently awarded an issue devisavit vel non under an order that saved the daughter's interest from forfeiture: Cooke v. Turner, 15 Simons, 611. Illustrations need not be multiplied to demonstrate the correctness of the rule observed by the court below, that such conditions as are found in the sixth clause of the will of the testatrix are inoperative, if there was probable cause of litigation, even where there is a gift over upon breach of the condition that the will shall not be contested.

In Chew's Appeal, 45 Pa. 228, though the exact question now before us was not before the court, it was there discussed and said of it by THOMPSON, J. : " Clauses in wills such as we are now considering are sometimes called conditions, and are also sometimes said to assume the character of conditional limitations: Russ. on Leg. 795. But by whatever designation they may be known, the general rule is that they are to be construed with great strictness, as they go to divest estates already vested : 2 Williams on Executors, 1145. It will not superinduce a greater freedom of construction to call them clauses of forfeiture, for they are never favorites in law, and have no place in administering equity. It seems to be well settled that where such a provision is merely denounced against disputing a will or its provisions without a devise over, it will only be considered in terrorem, and not as fixing on the devisee's share intestacy; and this shows the tendency of the law against giving efficiency to such provisions. But where there is a devise over, in case of a violation of the provisions, to some person named, or that the share thus limited shall fall into the residue of the estate for distribution, the share so limited will pass to its intended devisee or to the estate upon breach of the conditions: 2 Williams on Executors, 1147; 1 Russ. Leg. 795. It also seems to be the result of authorities, that if there exists probabilis causa litigandi, that the nonobservance of the conditions will not be forfeitures : Russ. Id. Undoubtedly, I think, no provision could be formed to oust the supervisory power of the law over such conditions and limitations to control them within their legitimate sphere, which is generally to prevent vexatious litigation."

In Powell v. Morgan, 2 Vernon Ch. Rep. 90, the testatrix gave a legacy upon condition that the legatee, who was her heir at law, " did not disturb or interrupt her will." He afterwards contested it, and it was held " there was probabilis causa litigandi, and it was not a forfeiture of the legacy." The question is considered in Schouler on Wills (3d ed.), section 605, where it is said: " Modern wills seek, in some instances, to prevent litigation, by forbidding the beneficiaries named to dispute the will. The law on this point is likely to be more firmly settled hereafter than it is at present. To exclude all contest of the probate on reasonable ground that the testator was insane or unduly influenced when he made it is to intrench fraud and coercion more securely ; and public policy should not concede that a legatee, no matter what ground of litigation existed, must forfeit his legacy if the will is finally admitted. As for construction proceedings, the testator's own language may have rendered them necessary. On the other hand, while the probate of the disputed will does not conclude that there was no just cause for opposing it, the testator's last wishes are authenticated as he expressed them ; and both in probate and construction proceedings, all speculative and heartless litigation, by which so many estates have been wasted, may well be discountenanced. No arbitrary rule meets well the cases likely to arise under this head, but circumstances ought to influence the construction. The English rule applied to legacies seems the true one ; namely, to treat a condition not to dispute the will as in terrorem, and void as against sound policy, wherever it appears that the legatee had probable cause for contesting the validity or effect of the will, though not otherwise. And if the maxim is a just one, it ought to avail as well in a devise ; and, generally, unless, perhaps, the language of the particular gift and circumstances require the restraint to be interpreted as a strict condition precedent. . . . In this country the question appears still an open one, though a few decisions bearing upon the point may be found. All clauses or provisions of this character should at least be construed as strictly as possible, being penal in their operation." Another text writer, in the light of cases referred to, says: " When legacies are given to persons upon conditions not to dispute the validity of, or the dispositions in wills or testaments, the conditions

are not in general obligatory, but only in terrorem. If, there-
fore, there exists probabilis causa litigandi, the nonobservance
of the conditions will not be forfeitures. The reason seems
to be this : a court of equity does not consider that the tes-
tator meant such a clause to determine his bounty, if the leg-
atee resorted to such a tribunal to ascertain doubtful rights un-
der the will, or how far his other interests might be affected by
it, but merely to guard against vexatious litigation : " 1 Roper
on Legacies, 2d American edition from 4th London edition, 795.
In Jackson v. Westerfield, 61 Howard Pr. Reports, 399, the
testatrix directed that if any legatee should " make any oppo-
sition or controversy in any court of law or otherwise, in re-
lation to the validity " of her will, such legatee should forfeit
the bequest given him or her and be excluded from all partici-
pation in her estate. There was a contest before the surrogate
as to her testamentary capacity. The will was upheld and the
persons who took part in contesting it were awarded their leg-
acies, the court saying : " Clauses in wills which impose re-
straints upon proper inquiry into testamentary capacity and
the legality and validity of dispositions of property should not
be favored."

Whether there was probabilis causa litigandi must, in every
case, be for the court distributing the estate of the testator,
and, when it is clear that there was such cause, the same de-
cree ought to be made that was made here. If it is not clear,
or if it is doubtful whether there was probable cause, the will
of the testator should be regarded as supreme, and his direc-
tion to forfeit carried out. A disappointed beneficiary under a
will is not to be encouraged to make a contest to set it aside,
and when he does so, in the face of notice from the testator
that he shall have nothing if he attempts to strike down his
provisions, he must understand the imminent risk he runs. The
orphans' court is a court of equity, and its judges, when passing
upon the question of forfeiture under such testamentary
clause, sit as chancellors. To their consciences are committed,
in the first instance, subject always to review by the proper
appellate court, the imperilled interests of legatees or devisees
who contest wills making them conditional beneficiaries, as
Mrs. Friend made her children and grandchildren. Whether,
under the circumstances, the court below properly saved to

Porter C. Friend the interest given him by his mother in her will is the other question before us.

In affirming the decree of the court below, refusing an issue devisavit vel non, we said: " We have examined with care the testimony in this case to ascertain whether the appellant's claim is supported by it, and entitles him to the issue called for in his petition. It plainly appears in the evidence that the testamentary capacity of the decedent was unimpaired when she executed the will in question. That she was a person of more than ordinary firmness and will power, and that she possessed these qualities while she lived, is also apparent in the testimony. It was not a characteristic of her nature to allow her children to dominate or influence her against her best judgment. On due consideration of the testimony, and of the clear and satisfactory opinion of the learned judge of the orphans' court, we affirm the decision of the register and dismiss the appeal at the cost of the appellant: " Friend's Estate, 198 Pa. 363. In view of this, we are now asked to say that the prior findings and conclusions of the court below are conclusive that there was not probable cause for this contest. The answer to this is, that the court, on the application for an issue devisavit vel non, made its findings and drew its conclusion after it had fully heard both sides—the contestant and the proponents of the will—and it is not to be assumed that they would have been the same if only the contestant and his witnesses had been heard. On the question of probable cause, the learned president judge heard the testimony of Mr. Sol. Schoyer, Jr., a member of the Allegheny county bar, and reviewed what had been offered by the contestant in the former proceedings. This was all that was before him, for he was not to again pass on the question of whether an issue devisavit vel non should be awarded, but simply whether Porter C. Friend, under the information which he possessed, and in view of what he was able to prove in the first instance, was justified in questioning the validity of his mother's will. If the question is to be determined in view of the findings and conclusions reached after the full hearing of both sides on the petition for an issue, it may well be contended that probable cause did not exist, but that that is not the test. Bearing this in mind, the learned judge was fully justified in saying, not in finding as facts, that

the testimony showed : " Mrs. Friend had been for many years in a distressing nervous condition, and during the last few years there seems to have been a perceptible break in her mental condition : one of her granddaughters testified that in these latter days she would tell ' the same stories over and over again within a few minutes' intervals ; she seemed to forget that she had told us.' Her son, J. W., had charge of her business for many years, was her adviser and had unbounded influence with her. Miss Maxwell testified : ' Grandmother always quoted him in everything ; she quoted him in this way : it was always Jim said this, or Jim, as she called him, said that. She always referred in her opinion to him and took her opinions from him.' On another occasion James W. Friend is reported to have said that his influence with her was so great he could do anything he pleased. There was no apparent reason why Mrs. Friend should have discriminated against her granddaughter. While she had disapproved of her only daughter's marriage, she continued to show a mother's devotion up to the date of Mrs. Maxwell's death, and was very much attached to her daughter's children ; and while her son Charles was somewhat dissipated and voluntarily left her house where he had resided before the will was made, she never led him to suspect that she would discriminate against him ; but even assuming he had, his wife and son who remained had done nothing to forfeit her love. Indeed, her repeated declarations that the intestate law made a good enough will negatived any intention of discrimination on her part as between her children and grandchildren. On the other hand, the attitude of J. W. Friend, whose influence was, as already seen, so great over his mother, was unjustifiedly hostile towards his brother Charles and his only sister, Mrs. Maxwell, and her children. In these circumstances the will in question was made by which $70,000 was given the Fidelity Title and Trust Company in trust—$20,000 whereof was to be for the benefit of Charles P. Friend during life, with remainder to said J. W. and H. T. Friend ; $12,500 to Agnes, wife of said Charles, with remainder to their son ; $37,500 to the daughter of Mrs. Maxwell, deceased, and the bulk of the estate, amounting in round numbers to $200,000, was given to said J. W. and H. T. Friend absolutely. There was a further provision that upon the written request of said J. W. and H.

T. Friend, the Fidelity Title and Trust Company, trustee above-named, should pay any of said cestuis que trustent such portion of the principal of the trust as might be designated therein by said sons. The will closed with a clause of forfeiture in the event of contest by any beneficiary. The letter of instructions for drawing was understood by contestant to have been in J. W. Friend's handwriting, but this was afterwards denied. The letter itself could not be found." To this he added : " It will readily be seen from this outline that there was enough to put any prudent man on inquiry as to the causes which led to the making of such will. The presumption of equality which the relations of the parties presupposed; the gross disproportion between the shares given J. W. and H. T. Friend and those of Charles and the Maxwell children; the weak and dependent condition of testatrix ; the influence of James over his mother and his persistent hostility towards his brother Charles and his sister and her children justified strong suspicions of undue influence and gave promise of developments of further evidence in that direction."

As being of any weight in itself in determining the question of probable cause, no importance is to be attached to the testimony of Mr. Schoyer that he had advised the contest. As a justification of the contestant's action it may fairly be taken into consideration with the independent facts upon which he must rely and which he communicated to Mr. Schoyer. Even in suits for malicious prosecution advice of counsel that it ought to be instituted is not evidence of probable cause, but only to disprove malice arising from the want of probable cause : McCarthy v. De Armit, 99 Pa. 63 ; Emerson v. Cochran, 111 Pa. 619. There is no question of malice in cases like the present, and if the mere advice of counsel can be regarded as probable cause for instituting proceedings to contest a will, there would be none without cause, and, in every instance, such a clause as the testatrix inserted in hers would be nugatory. Not being persuaded that there was error in holding that Porter C. Friend had probable cause for his action in contesting the will of his mother, the decree of the court below is affirmed and the appeal dismissed at the cost of the appellants.

MITCHELL, C. J., and POTTER, J., dissent.