## Spring Garden Institute v. Wanamaker Institute, etc., et al.

*D. Byrne Flynn*, for *M. W. Sloan*, for plaintiff.

*Thomas P. Mikell*, for *Saul, Ewing, Remick & Saul*, for defendants.

MILNER, J., April 23, 1942.—A bill in equity was filed in this case by the Spring Garden Institute, with the consent of the Attorney General of the Commonwealth of Pennsylvania, against the Wanamaker Institute of Industries, a charitable corporation, its officers and trustees, alleging that defendant corporation has "abandoned the scheme of the charity for which it was organized and ceased to have as the purpose of its organization and operation the objects and purposes declared in its Charter", and praying the court to distribute the assets of defendant corporation under the cy pres doctrine.

The School District of Philadelphia filed a petition for leave to intervene as a party defendant, which was granted. An answer was filed by the Wanamaker Institute and its officers and trustees denying the allegations of plaintiff above mentioned. A hearing was had and at the close of plaintiff's case, upon the motion of defendants' counsel, the chancellor entered a decree under Equity Rule 66 dismissing the bill. The matter comes before us upon an exception filed by plaintiff to the entering of the said decree.

The Act of May 23, 1895, P. L. 114, sec. 1, which amends the Act of April 26, 1855, P. L. 328, sec. 10, provides that "no disposition of property . . . for any . . . charitable . . . use, shall fail for want of a trustee, or by reason of the objects being indefinite, . . . or ceasing, . . ." The act declares, inter alia,

that it is the duty of a court having equity jurisdiction, by its decree to carry into effect the intent of the donor or testator of such property, and that proceedings shall be instituted by leave of the Attorney General of the Commonwealth, on the relation of any institution, corporation, etc., not for profit, desirous of carrying such disposition into effect.

The Wanamaker institute has been in existence as a school under the name of Bethany College, and as a corporation under the name of Wanamaker Institute of Industries, for 52 years. It was originated by the late John Wanamaker in connection with his activities at the Bethany Presbyterian Church, as a school for deserving young men and women to instruct them in useful trades and occupations, such as bookkeeping, typewriting and dressmaking, and kindred trades and occupations. In the early years of its existence it was known as Bethany College, and was supported by the contributions of John Wanamaker. On November 10, 1900, Rudolph S. Walton, who had been an employe of John Wanamaker, died leaving a will, in which he devised the residue of his estate to his executors and trustees to hold the said residue during the life of his wife, Mary Elizabeth Walton, and upon her death, after paying certain other specific bequests from the residue in their hands, to pay the residue of his said estate to his trustees for the following uses and trusts:

"IN TRUST at the expiration of one (1) year from the date of the death of my beloved wife to pay over my said residuary estate unto the Board of Trustees or the Board of Managers of the Bethany College, now located in the City of Philadelphia, whether conducted under this title or not provided said College is duly incorporated at that time and that the purpose of its organization and operation shall be to instruct and educate worthy and deserving poor boys, young men and young women in Bookkeeping, Writing, Teleg-

raphy, Phonography, Typewriting, Dressmaking, Art Needle Work, Millinery, and such other trades, useful occupations and employment, or other branches of common school education as the Trustees or Managers of said College may find it possible to teach, said instruction and education to enable the pupils to improve their condition and thus assisting them in properly qualifying themselves for positions which will yield a livelihood and thus make them self-supporting."

Upon the death of Mrs. Walton the fund was paid over to the said trustees.

The Bethany College mentioned in the will was incorporated under the name of the Wanamaker Institute of Industries, by the decree of the Court of Common Pleas No. 1 of Philadelphia County, dated April 6, 1908. The object and purpose of the corporation in its charter was:

"To perpetuate the schools established by the Bethany Presbyterian Church of the City of Philadelphia through the Bethany College; to instruct and educate worthy and deserving poor boys, young men and young women in Bookkeeping, Writing, Telegraphy, Phonography, Typewriting, Dressmaking, Art Needle Work, Millinery and such other trades, useful occupations and employment, or other branches of common school education as the Trustees or Managers of said Corporation may find it possible to teach, said instruction and education to enable the pupils to improve their condition and thus assisting them in properly qualifying themselves for positions which will yield a livelihood and thus make them self-supporting; and in addition thereto, to enlarge and develop the course of study so that full opportunity may be given students to secure such an education as may furnish facilities for the practical learning of Mechanical Trades, and fit them for obtaining the best possible positions."

Subsequently the trustees of the residue of the estate of Rudolph S. Walton paid over to the said corporation the entire residuary estate for the purpose of carrying into effect the purposes declared in its charter.

After the organization of the school and receipt of the above mentioned fund in 1908 the Wanamaker institute conducted a school for the instruction of deserving poor persons in useful trades and occupations, and occupied as its school building, free of charge, a property at the corner of Twenty-third and Walnut Streets, Philadelphia. This property belonged to John Wanamaker, who had been interested in the school. Upon his death in 1922 his estate continued to allow the school to remain in the building, free of charge, until the late twenties when the estate demanded payment of rental for the property. After several years of operation and the payment of this rental the board of trustees of the institute found that its capital was being impaired and it was obliged to borrow against the securities forming its capital, and was going deeper into debt each year. The board then decided it would have to abandon the premises upon which it was paying rent and attempt to find some other method of operation. As a consequence it was compelled to vacate the school property at Twenty-third and Walnut Streets in 1932, and to sell the school equipment. The board of trustees, however, continued to function and the income from the capital investments was used during the next few years to pay off the indebtedness, and studies were made by the board for a method of operation which would best carry out the purposes of the charter of the corporation and utilize the fund, which now amounts to about $150,000.

On June 25, 1937, an agreement was entered into with the School District of Philadelphia, under which the school has been conducted from June of 1937 to the present date. The agreement was placed in evi-

dence and testimony taken with respect to the operation of the school thereunder. Under this agreement the school district during the regular evening sessions supplies without cost to the institute facilities, including an adequate space in the Fleisher School building at Thirteenth and Green Streets, Philadelphia, necessary superintendence, janitor service, heat and light for the conduct of classes of instruction in useful trades and occupations, free of cost to the pupils. The school rooms in which the classes are held are designated by signs over their entrances as classes of the Wanamaker institute.

The classes are offered by the Wanamaker institute and are advertised and set forth in curriculums and circulars distributed yearly as courses given by the Wanamaker institute. Pupils enroll as pupils of the institute, and do not become pupils of the public school system. The institute determines the curriculum, that is, determines the courses of study which are to be offered in the school. These courses of study are consonant with the courses of study which had been previously offered by the Wanamaker institute prior to the time it entered into the agreement with the school district. They are undoubtedly within the scope of the object clause of the Wanamaker institute charter and within the intent of the donor of the fund under which the institute operates, as expressed in his will.

The school district supplies the names of the teachers, but the teachers must be approved by the institute, which also approves the salaries to be paid to said teachers. The officers and trustees of the institute have the right to visit the classes and inspect the work at any time and the board of trustees meets from time to time in the Fleisher School.

The school is being conducted in a better and more central location than that it formerly occupied, and is available to deserving persons without regard to color, race or creed. By virtue of the agreement with

the city it was enabled to carry into effect the intent of the testator, Rudoph S. Walton, more effectively than ever before and the income from the fund at its disposal is now sufficient to pay the teachers needed to give its courses. One of its present trustees, Samuel W. Fales, has been connected with the institute and its predecessor, Bethany College, since 1905, and others of the present trustees and officers of the institute have been connected with the institute for many years. There are 11 members of the board of trustees. Since the agreement was entered into with the school board, Albert A. Owens, a member of the extension board of the school district, in charge of evening schools, has been made a member of the board of trustees of the institute, and he usually suggests the names of the teachers for the approval of its board of trustees. Dr. William Henry Welsh, who is also a member of the said extension board, and is also a member of the board of trustees of the institute. None of the officers of the institute is connected with the school district.

Plaintiff, Spring Garden Institute, is a charitable corporation, and it was organized to promote the moral and intellectual improvement of young persons, in furtherance of which it has conducted in Philadelphia for many years a school in which young men and women are instructed in trades, useful occupations and other branches of common school education. It is apparent that it was prompted to bring this bill by its hope that if it were declared that the Wanamaker institute had ceased to carry out the intent of the donor of its fund, it might qualify under the doctrine of cy pres as a charitable corporation with a somewhat similar purpose, and thus have the fund awarded to it. Although the Spring Garden Institute is a worthy institution, and has earned the respect of the community, nevertheless, the recital of the above facts lead us to the conclusion that the Wanamaker Institute of Industries is carrying out the intent of the donor of

its fund with fidelity worthy of approbation; that its officers and trustees have used wise judgment in entering into the aforesaid agreement with the school board, and that the institute has not abandoned the scheme of charity for which it was organized.

It is clear that the cessation of teaching activity from 1933 to 1937 was only a temporary arrangement and was not intended as and did not become an abandonment of its objects, and the arrangement with the school board is beneficial in that it enables the institute to reach the largest number of pupils which it can instruct within the scope of its limited financial facilities.

The dismissal of the bill of complaint in this case was justified not only under the facts but under the authority of the decision of the Supreme Court in Jordan's Estate, 310 Pa. 401 (1933). In that case the income from the trust fund had been left to a school known as The York County Academy, but with a gift over in the event that the trustees of the school failed to maintain it during at least nine months of each year. The academy had been in existence for over a century and a quarter. In the early days of its operation the scholars varied in number from 34 to 75. Between 1922 and 1926 the number of scholars varied from 20 to 31. In 1927 there were but eight pupils, and in 1929 there were 12, and the school building, both as to character and location, had ceased to be a good place for the academy to be carried on. The trustees of the school then entered into an arrangement with another school called the York Collegiate Institute, which had a well located and equipped school, whereby the institute gave to the trustees of the academy, its teachers and students, such use of its buildings, grounds, facilities and equipment of the institute as may be necessary for instruction in the branches contemplated to be taught by the academy, in common with the students of the institute. The students were en-

rolled as students of both institutions, and the combined institutions were to adopt a curriculum including the branches previously taught by both. The academy was to employ at least two teachers and had the privilege of employing "such teachers of the institute as it may determine, at such salaries, nominal or otherwise, as the academy may determine". Graduates received joint diplomas from the two institutions. The Supreme Court refers to this arrangement as a "reciprocal teaching agreement" and held that the school had not abandoned its purpose or gone out of existence, and refused to decree the distribution of its assets.

In that case, as in the one at bar, there was no challenge of the good faith of the board of trustees of either school or party in entering into the reciprocal arrangement. Nor was there a claim in either case that the results have not justified the course pursued. (See pages 410 and 411 of the Supreme Court's opinion.)

The facts in the case at bar make defendants' position stronger than the position of the school in the case which we have been discussing. A comparison of the respective methods of operation shows quite clearly that the identity of the Wanamaker institute has been maintained to a far greater degree than was the identity of the York County Academy in Jordan's Estate, supra. We know of no doctrine of the law that would hold that the mere fact that a school has availed itself of a building and other facilities free of cost in order to enlarge and better its operation would cause a forfeit of its franchise or impel a court to hold that its charitable scheme had been abandoned.

Plaintiff has the burden of proving the allegations of its bill of complaint, and,

". . . that burden is not a light one, since to sustain the contention, would, in effect, work a forfeiture, which, in really doubtful cases, the courts will not do:

Henry B. Chew's App., 45 Pa. 228; Friend's Est., 209 Pa. 442, 446"; Jordan's Estate, supra, at page 410.

The Wanamaker institute has done nothing in violation of the provisions of its charter, and it has never been dissolved as a corporation or abandoned its corporate existence, and is carrying out the objects for which it was incorporated and which were in the contemplation of the donor of the fund as expressed in his will. The agreement with the school district is on a year to year basis, and may be terminated by either party upon proper notice at the end of each school year. The institute has not ceased to be an independent, self-governing institution merely because it is using, free of cost, some of the facilities of the school district, and it may if it sees fit to do so, take advantage of the use of other facilities in carrying on its objects by simply exercising its reserved power of revoking its agreement with the school district in the manner provided. We fail to see how the wisdom of entering into the agreement with the school district can be challenged and we are of the opinion that the plaintiff has failed to prove that the Wanamaker institute has "abandoned the scheme of charity for which it was organized and ceased to have as the purpose of its organization and operation the objects and purposes declared in its charter".

It is also interesting to note that in Girard's Appeal, 4 Pennypacker 347, it was said that the fact that the City of Philadelphia relinquished the trust for charitable purposes provided by Stephen Girard's will, to the board of city trusts, could not be held to be a termination of the trust.

Plaintiff's exception to the action of the court in entering the decree of March 4, 1942, dismissing the plaintiff's bill of complaint is dismissed.

President Judge MacNeille and Judge Mawhinney concur with this opinion.