## Arnold's Estate

*Welles, Mumford & McGrath,* for estate.
*H. R. VanDeusen,* for heirs.
*Vance L. Eckersley,* for M. E. Church.

MURPHY, P. J., March 20, 1946.—Testatrix, Blanche Arnold, late of the City of Carbondale, Lackawanna County, died on May 24, 1926, and by her last will and testament, duly probated in said county, made, inter alia, the following bequest: "I give and bequeath to Charles H. Horton, Attorney, of Carbondale, Pennsylvania, the sum of One Thousand ($1000.00) Dollars in trust, however, as follows: To invest the same as I have hereinafter directed, to collect the dividends and income thereof and after deducting charges, he shall pay the net income semi-annually to the proper officials of the Methodist Episcopal Church of the Township of South Canaan, Wayne County, Pennsylvania, to be used for the support and maintenance of the said Church as its proper officials shall deem best."

Testatrix made similar bequests to several other charitable and religious institutions.

In a subsequent clause of the will, testatrix provided as follows: "It is my will, and I hereby direct, that in case any of the above institutions above named shall *cease to exist* and the corporation shall be dissolved and as I have not heretofore set the disposition to be made of the legacy given and bequeathed to such institution in trust, then and in such case the said legacy shall be deemed to have lapsed and the same

shall revert to my estate and held and direct that the same shall be disposed of among my heirs, in the same manner as if I had died intestate."

From the testimony taken at the hearing on the petition it appears that from 1926 to 1943 the income of the trust fund was paid semi-annually to the proper officials of the Methodist Episcopal Church of South Canaan, Wayne County, Pa. In 1943, the few remaining members of said church merged with the Congregation of the Methodist Episcopal Church of Waymart which is adjacent to South Canaan and in the same county. The South Canaan church which testatrix attended has always been a part of the Waymart charge as designated in the Scranton District of the Methodist Episcopal Church and was served by the same pastor as the Waymart church. These two churches were closely associated during the lifetime of testatrix. All of the personal property, records and proceeds of sale of the real estate of the South Canaan church were transferred to the Waymart church by common consent. At the annual meeting of the Wyoming Conference in 1943, the governing body of both of these churches, a resolution was passed effecting the discontinuance of the church at South Canaan and its merger with the Waymart charge. All the members of the constituent churches became members of the combined church which thereafter carried on the same religious and charitable work and in the same places as the two had previously done.

It is the contention of the heirs of Blanche Arnold that the South Canaan church has "ceased to exist" and that they are entitled to the fund. The question before us therefore is as to the proper disposition of the fund.

The trust in this case is for the support and maintenance of a place of public worship by a particular

denomination. It is for the advancement of religion and therefore is a charitable trust: Tollinger's Estate, 349 Pa. 393; Canovaro et al. v. Brothers of the Order of St. Augustine, 326 Pa. 76; Board of Home Missions v. Phila., 266 Pa. 405; A. L. I. Restatement of the Law of Trusts, sec. 371; 10 Am. Jur. sec. 55, p. 624. In ascertaining the meaning of a charitable trust the language used is to be given a broad and liberal construction and one favorable to its purpose. Especially is this so if the trust has vested and thereafter ceases to exist the courts will go very far in an endeavor to discover a predominating charitable intention so that the trust may be enforced: Wilkey's Estate, 337 Pa. 129; 10 Am. Jur. sec. 129, p. 680. See also Harmon v. Romberger, 18 Dist. R. 486.

It must be noted here that the income from this particular trust had been paid to the South Canaan church for over 20 years after the death of testatrix. The legacy had vested in the first instance and we are reluctant to divest it unless the intention to do so is clear from the will of testatrix. The burden is upon the heirs to prove that the church has gone out of existence and,

". . . that burden is not a light one, since to sustain the contention would, in effect, work a forfeiture, which, in really doubtful cases, the courts will not do. Henry B. Chew's Appeal, 45 Pa. 228; Friend's Estate, 209 Pa. 442": Jordan's Estate, 310 Pa. 401 at 410.

In McCully's Estate, 269 Pa. 122, the legacy was to the Grace Presbyterian Church which *before* the death of testator united with another church of the same denomination to form the Waverly Presbyterian Church. Our Supreme Court there held that the "object of the trust" did not cease to exist by the consolidation of the two churches and the dissolution of the Grace Presbyterian Church and therefore the heirs

had no claim to the fund. Except for the fact that the merger took place before the death of testator, this case is quite similar to the case at bar. Under the decisions above noted it would appear that the instant case is stronger because of the fact that the legacy had vested and we will enforce it if there is any reasonable basis to ascertain the predominating intention of testatrix.

Jordan's Estate, 310 Pa. 401, involved a charitable trust for the benefit of an academy with the provision that if it "shall go out of existence as an academy or a college" the trust income should go to a certain church. The academy ceased to function in the building owned by it and made "a reciprocal teaching agreement" with another educational institution under which all instruction was conducted in the latter's building. It was held the academy had not gone out of existence and was still entitled to the trust income.

In determining the meaning of a will, the court endeavors to put itself in the place of testatrix and thereby ascertain her meaning in the light of all the circumstances by which she was surrounded when she made it, and by which she was probably influenced.

In the case at bar we must decide whether the South Canaan church "ceased to exist" within the meaning of testatrix after its merger with the Waymart church.

It is our opinion that it did not. While there was a discontinuance of the original church congregation, the practical effect was to merge the original church into the Waymart church and to carry on the very purposes for which testatrix really intended the income to be used. The same minister served both churches. The surviving members of the donee church attended the Waymart church. If the donee

church were moved to another site in the same locality it could not be said that the trust would fail. The fact that it was admittedly a merger of the two churches should not change the legal incidents of the legacy especially after it vested. To merge means to combine. "It suggests a joining together, an addition, a combining of the qualities of one with another; *not a death, but rather a marriage.*": (Italics supplied.) In re Barmeier's Estate, 282 N. Y. Supp. 695. The two churches here joined forces combining all that each had under the name of one. There was no extinction or a "ceasing to exist" of either of them. The parishioners were the same, the religious purposes and services were the same, the minister was the same and if testatrix were living she would have the same interest in the new church as in the old. While the physical building may have "ceased to exist" as a church the "church" as an "institution" of worship continued in the new and more modern structure in Waymart. The merger was not a cessation of the religious work, services or the religious purposes carried on formerly under the name of South Canaan Methodist Episcopal Church. The work of the church was continued by its officers and members under the new name in the Waymart church. See McCully's Estate, 269 Pa. 122.

The physical location of the edifice or institution has been held to be of secondary importance in comparison with the general purpose for which the carrying on of the charitable activity was designed: Avery v. Home for Orphans of Odd Fellows of Pennsylvania, 228 Pa. 58; Kramph's Estate, 228 Pa. 455; Mear's Estate, 299 Pa. 217; Curran's Estate, 310 Pa. 434.

There is no question that the will created a trust for a charitable purpose and in ascertaining the intent

of testatrix a broad and liberal construction and one favorable to its purpose should be applied.

The word church, in everyday language, does not necessarily refer to, and only to, the building or place of worship but also to the purposes for which a body of worshipers unite themselves.

In view of the close association of the two churches before the death of testatrix; their proximity to each other; the fact that the South Canaan church was part of the same charge as the Waymart church and served by the same minister; that they were of the same denomination, had the same services and served the same purposes; and that after the merger of the two churches the South Canaan parishioners attended the Waymart church and all of the personal property, records and proceeds of sale of the real estate were transferred to the Waymart church with the ecclesiastical sanction of their common governing body, we conclude and so find the "object of the trust" did not "cease to exist" within the legal meaning of that term and within the intention of testatrix as we ascertain it from the four corners of the will.

Now, March 20, 1946, it is ordered and decreed that:

1. The income from the trust fund created by the will of Blanche Arnold for and in behalf of the Methodist Episcopal Church of the Township of South Canaan, Wayne County, Pa., is to be paid to the Waymart Methodist Episcopal Church of the Borough of Waymart, Wayne County, Pa.

2. It is also directed that the trustee of said trust fund pay to the attorney for petitioner, out of said trust fund, the sum of $50 as counsel fee for services in these proceedings.