## Sands Estate

*Desmond J. McTighe*, for accountants.

*Desmond J. McTighe, George Pownall Orr, Madison S. DuBois, M. Paul Smith* and *Franklin L. Wright*, for beneficiaries.

HOLLAND, P. J., August 4, 1948.—The record facts, the terms of the will, the identity of the interested parties and the proportions of their respective interests are all set out in the petition for adjudication. . . .

Under item 26 testatrix recited that on September 5, 1940, she had filed her account as trustee of the residuary trust in the estate of Mary Ann Stinson, deceased, and that the account had been filed at the request of the attorney for certain of her nieces. She then provided that if any of her nieces or grandnephews should file any exception to this account or otherwise take action contrary to her interest, all legacies and bequests theretofore made in favor of such nieces and grandnephews should automatically be re-

voked. On October 25, 1940, exceptions to the said first account of Imogene Sands as trustee, as aforesaid, were filed in this court by Mary I. Sands, Frances S. Sands, Sarah S. Rauhood, William Sands, Russell Sands, and Earl Sands.

The question is submitted as to whether this forfeiture inflicted upon these legatees who filed exceptions is enforcible or whether it comes within that category of in terrorem limitations on testamentary gifts which are unenforcible as being against the policy of the law.

These deprived legatees first argue that the item of the will that inflicts the forfeiture refers only to legacies preceding the residuary clause because she refers to "all legacies and bequests heretofore made". They argue that the words "legacies and bequests" refer only to the specific and pecuniary bequests preceding the residuary clause but do not include the residuary clause. With this I cannot agree as it has always been considered that a residuary beneficiary was a "legatee" and received a "bequest" when the same was personalty, the same as the beneficiary of specific and pecuniary bequests.

They next argue that, granted the forfeiture clause actually does work a forfeiture as far as the will is concerned, by her making a codicil to her will without any mention of the forfeiture and reaffirming her will in all respects, she evidenced a change of mind in regard to these beneficiaries, they having filed their exceptions between the date of the will and the date of the codicil, and that the reaffirmance of the gift in her will reaffirms the gift to them of their residuary benefits without any forfeiture on account of their actions. With this also I cannot agree, because it is well settled that a codicil only revokes a will insofar as it is inconsistent with the terms of the will or where the revoca-

tion is of a specific gift in the will, and that and that alone is revoked. Furthermore, when she affirmed all other provisions in her will except those revoked specifically by the codicil, she reaffirmed also that provision that inflicted the forfeiture. Reading the will and codicil together, I am convinced it was the clear, unequivocal intent of testatrix that if any of the nieces or grandnephews filed any exceptions or otherwise took adverse action with reference to her trustee's account under the Mary Ann Stinson estate, their action was automatically to forfeit all benefits that she had given them in any part of her will, and I so hold. It should be noted that insofar as the word "heretofore" is concerned, the forfeiting clause no. 26 is subsequent to all of the gifts, specific, pecuniary, and residuary in the will.

The sole question, therefore, for my consideration is whether the intended forfeiture is in the category of in terrorem testamentary provisions which the law will not enforce on the ground that it is against its policy.

The various examples of in terrorem provisions are well known, but the one most nearly approaching this case is that of inflicting a forfeiture for challenging a testator's will. It is well established that this will not be enforced because it would give a person who had practiced duress the double security of not having to even defend against an attempt to bring him to justice: Friend's Estate, 209 Pa. 442 (1904) ; Mitchell's Estate, 20 D. & C. 101 (1933).

A fiduciary who inflicts a testamentary forfeiture upon a cestui que trust to deter him from critically examining his accounts and his administration of the trust in general and filing exceptions or taking other appropriate legal action, if necessary, would in the same manner doubly secure himself against even having to defend against an attempt to bring him to jus-

tice. A defaulting fiduciary could misappropriate the corpus of the trust, and the subject of his peculations possibly appear in his estate after his death. Such a testamentary forfeiture, if enforced, could put the beneficiary named in his will in the dilemma of taking under the will what in fact was already his, it having been stolen from him, or taking the hazard of litigation, with all its expenses, to obtain his due by seeking to surcharge the deceased fiduciary's estate. It would be a bad policy. The processes of the law should not be hampered by any insidious and indirect controls of individuals. While litigation is to be discouraged rather than incited, the converse is equally true, that proper and honest litigation to redress injuries should not be prevented or access to the courts impeded by threats of reprisal, or hopes of gratuities.

It has been argued that in all this class of cases the threatened forfeiture was published, and known to the victim, before he performed the prohibited act, whereas in this case, the deprived legatees did not know the contents of the will until after they had done the act, therefore, their action was not affected by the threats. But if I were to so hold and such a principle of law were to become established that a fiduciary could hide in his will such an enforcible forfeiture, the principle of law itself would become a threat and just as effective a one. One can well imagine an aggrieved cestui que trust, in engaging legal counsel to attack a defaulting or negligent fiduciary, being warned by his counsel of the power of the fiduciary to inflict in his will an enforcible forfeiture upon the injured cestui que trust. Of course, the deterrent effect of such advice would only apply to a cestui que trust whose relation to the fiduciary was such as to indicate a probability of his being a beneficiary under the fiduciary's will. But then, it is only where such a relation obtains that these cases arise.

I am well aware that in this particular case it might be pointed out that these deprived legatees were ungrateful cestuis que trustent who had been generously treated over a long period of years by Imogene Sands, and that they got what they deserved. The adjudication of the auditing judge upon the account of Imogene Sands, trustee, might allow of such an inference. Mention was made of the many instances of generous treatment of the trust by the trustee. It has also been argued, and with plausibility, that had Imogene Sands so contended, there is every probability the entire estate of Mary Stinson would have been awarded to her absolutely. She chose to contend only for the life benefit of the trust and agreed that she be trustee for her life, with the result that these deprived legatees became beneficiaries of the principal of the trust.

Although the forfeiture in this case might be justified, as in many others, the enforcement of it would establish a vicious principle of law, dangerous in its effect, and create a potential instrument of defense in the hands of a faithless or negligent fiduciary. I hold, therefore, that the forfeiture contained in item 26 of the will is unenforcible as being one in terrorem, whereby the residuary legatees named in the residuary item of the will participate in this distribution in accordance with its terms. Of course there also will be awarded to the specific and pecuniary legatees, their respective legacies as provided by the other items of the will. . . .

The account is confirmed, and it is ordered and decreed that Anna Mae Sands Spry and Earl M. Spry, executors as aforesaid, forthwith pay the distribution herein awarded.

And now, August 4, 1948, this adjudication is confirmed nisi.