# Friend's Estate.

| 198 | 363 |
| 205 | 456 |
| 198 | 363 |
| 207 | 208 |
| 198 | 363 |
| e208 | 427 |
| s209 | 444 |
| s209 | 449 |

*Will—Issue devisavit vel non—Undue influence—Burden of proof.*

In a contest over a will in which a son is largely preferred, although it appears that the son was his mother's trusted and confidential agent, the burden of proof in the absence of testimony tending to show that the mental faculties of the testatrix were impaired, is upon the contestant to show that undue influence was used.

On an application for an issue devisavit vel non, it appeared that testatrix had largely preferred two of her sons, and had made but small provision for a third son, who was the contestant. One of the sons preferred had the sole control and management of testatrix's affairs, receiving all the income from her estate and disbursing it. The will was prepared by an attorney under written instructions from testatrix, but at the time of its execution was not read to her, although she had the paper in her possession before it was executed. One of the sons preferred had arranged that an intimate personal friend of his own should be one of the subscribing witnesses. The evidence did not show that testatrix's mind was impaired. *Held*, (1) that the burden of proof of undue influence was upon the contestant; (2) that an issue was properly refused.

Argued Oct. 31, 1900. Appeal, No. 127, Oct. T., 1900, by Porter C. Friend, from decree of O. C. Allegheny Co., June T., 1898, No. 238, dismissing appeal from register of wills in the estate of Rebecca Jane Friend, deceased. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Appeal from register of wills, admitting to probate the will of Rebecca Jane Friend, deceased.

From the record it appeared that testatrix died on March 25, 1898, at the age of seventy-two years, leaving the will in question executed on June 10, 1896. Testatrix left to survive her three sons, Porter Charles, the appellant, James W. and Harry T. Friend, three granddaughters and two sisters. A large portion of the estate was given to her sons, James W. and Harry T. The provisions of the will are stated in the opinion of the court below. The will was prepared by William Bakewell, an attorney, without any oral consultation with Mrs. Friend, but from a letter of instruction from her. Owing to Mr. Bakewell's age and illness this letter was not found or pro-

duced. After the preparation of the will, Mr. Bakewell mailed it to Mrs. Friend, and several days later she executed it at the office of the Fidelity Title & Trust Company without its being read to her in the presence of the subscribing witnesses and Mr. Bakewell. After the execution of the will it was left at the trust company, and testatrix immediately drove to the office of her son, James W., and left the receipt for it with him. The will had been read by James W. Friend before its execution, and he had arranged with Dr. McClellan, his personal friend, to act as subscribing witness, and that his mother should meet Dr. McClellan at his office and take him to the trust company.

James W. Friend had the exclusive control and management of all his mother's property, receiving all income and disbursing it. Mrs. Friend lived with her son Harry T. Friend, and her son James W. Friend, lived close by. At the hearing the contestant produced evidence which to some extent tended to prove the circumstances enumerated by him as follows :

(*a*) The sole control and management by James W. Friend of all the affairs and property of his mother, both as her technical trustee and confidential adviser.

(*b*) His absolute control domineering over her in all the affairs of life, and her implicit reliance upon and deference to him, susceptibility to his influence, and assimilation of his prejudices.

(*c*) The discriminations in favor of James W. and his brother Harry T. as' against the natural objects of her bounty.

(*d*) Feebleness of health, deterioration of memory and will power on the part of Mrs. Friend.

(*e*) Activity of appellees in and about the preparation of the will and the taking of their advice by testatrix in relation to the provisions thereof.

(*f*) The bitter enmity of James and Harry toward their brother Porter and their sister Mrs. Maxwell and her children.

(*g*) The situation of Mrs. Friend showing the opportunities for influence on the part of appellees.

(*h*) Direct procurement by James W. of the clause releasing him from accounting to trustee by misrepresentations, and concealment of various breaches of trust for which he would have been accountable.

(*i*) Ignorance on the part of Mrs. Friend of the extent and value of her estate and of the value of the residue that would go to James W. and Harry T. Friend under the will.

(*j*) That Mrs. Friend gave no oral instructions as to the preparation of the will ; it was not read over to her at the time of its execution, and it did not appear even that she wrote the letter of instructions.

OVER, J., filed the following opinion :

Rebecca J. Friend, the decedent, died on March 25, 1898, leaving to survive her three children, James W., Harry T. and Porter C. Friend, and three children of a deceased daughter, Mrs. Mary Maxwell—Mary P., Hannah W. and Margery Maxwell.

By a testamentary paper executed on June 10, 1896, when she was about seventy years of age, and admitted to probate by the register, she disposed of an estate valued by appellant at $409,000 and by the appellees at $260,000, as follows: $70,000 to the Fidelity Title & Trust Company, $37,500 thereof in trust for the Maxwell children, the income of $20,000 to Porter C. Friend for life, with remainder to J. W. and Harry T. Friend, the income of $12,500 to Agnes Friend, the wife of Porter C. Friend, for life, with remainder to James K. Friend, their son, and the residue of the estate to J. W. and H. T. Friend.

Porter C. Friend appealed from the decision of the register admitting the will to probate, alleging that James W. Friend procured it to be made by undue influence, and prays for an issue to determine the question.

The estate disposed of by the testatrix was given by the will of her father to trustees for her benefit during life, with power of appointment by her. James W. Friend had some years prior to her death been appointed and acted as one of the trustees. His relations with his mother were very intimate ; he was consulted by her in all business affairs, and acted as her agent and confidential advisor. And it is claimed by the appellant that, under the rule laid down in Miller v. Miller, 187 Pa. 574, the burden is upon him to rebut the presumption of undue influence. One of the syllabi of that case is as follows :

" In a contest over a will in which a son is largely preferred, if it appears that the son, although not the father's attorney, was

his trusted and confidential agent, the burden of proof is on the son to rebut the presumption of undue influence."

We do not think it was the intention of the Supreme Court there to hold, as the syllabus quoted indicates, that in the absence of testimony tending to show that the mental faculties of the testator were impaired, the burden of sustaining the will would be cast upon a son standing in a confidential relation to the testator who received a large portion of the estate. If so, the rule would be more unfavorable to him than to a stranger receiving a large testamentary gift and standing in a confidential relation—as it is only where a testator is shown to be of weak mind that the burden is cast upon him to sustain the will: Coleman's Estate, 185 Pa. 437, and cases there cited. See also Scattergood v. Kirk, 195 Pa. 195, and Logan's Estate, 195 Pa. 282.

The rule laid down in Miller v. Miller, supra, seems to be a departure from that in Caldwell v. Anderson, 104 Pa. 199, where it is held that the presumption of undue influence which might arise against a stranger did not, under the same circumstances, arise against a near relative of the testator who wrote the will and was the principal beneficiary under it. What was said in Miller v. Miller upon this question should be construed in the light of the facts of that case, and it appears from the opinion in Miller's Estate, 179 Pa. 645, that an important factor in granting an issue in that case was the fact that there was evidence from which the jury might find that the testator's mental faculties were greatly impaired.

If, then, in this case, there is no evidence from which a jury could find that the mental faculties of the testatrix were impaired, the burden is upon the appellant.

The testimony adduced by him on this subject, principally from two witnesses, Anna and Mary Maxwell, is substantially that the decedent was very nervous, subject to nervous headaches, had two attacks of St. Vitus' dance; that she read juvenile papers; that she had a failure of memory (without, however, giving instances), and lost interest in things and became "more indifferent."

Doctor McClelland, who was her attending physician for fifteen years, testified that she was nervous, that he didn't treat her for that but for indigestion; that her death was caused by a tumor of the kidneys; that he witnessed the will; that she

understood what she was doing, and had great firmness and strength of will up to the time of her death, "remarkable in that respect," and that her mind was clear. And Wm. Bakewell, Esq., who prepared this and three other testamentary papers for her, testified: "I always regarded her as a woman amply competent to take care of herself, a woman of strong opinions, and always disposed to have her views carried out. That is my general idea of her characteristics."

The evidence of appellant, standing by itself, does not appear to show any impairment of the decedent's mental faculties, and there can be no question, under all the evidence, that there was none. So that the burden of proof is upon the appellant to show undue influence. He relies first, upon the inequality and discrimination in the will in favor of James W. Friend and H. T. Friend. It appears, however, from the testimony of Porter C. Friend, the appellant, that there were reasons for the discrimination against him. He with his wife and child had lived with his mother until 1888, and for some years prior thereto had used liquor excessively. In 1888 he left his mother's house, and gave the following account of his reasons for leaving:

"There never had been a word about my drinking with my mother. About that time I realized the fact that I shouldn't drink and I determined to abstain entirely from the use of liquors. At the time I wasn't drinking any; I was making a battle to avoid that, when my mother said to me alone on the back porch, 'Son, if you ever take to drinking again, you will have to leave my home. I will take charge of your wife and your boy until such time as that habit has been overcome.' That was the only statement. I left the house that day, Mr. Schoyer. I felt hurt; I suppose my pride was hurt; and I didn't go back."

He says that he reformed subsequently, but there is no evidence that he ever visited or saw his mother after he left her home, except once when she visited him at the St. Charles, until a few days prior to her death. His wife and son remained with and were supported by her until that time.

It was very natural that Mrs. Friend, by reason of Porter's conduct, should prefer her other children to him, and she evidenced such a preference as early as October 31, 1882, by a will of that date in which she made substantially the same provision

for him as in the one in dispute, but much more liberal provisions for his wife and child.

Her only daughter, on June 16, 1870, married, without her mother's consent, Edward L. Maxwell. Subsequently she and her daughter became reconciled, and she was on friendly terms with her until the daughter's death, and with the Maxwell children until her death. There is no evidence, however, that she forgave Mr. Maxwell, and she made careful provisions in two wills made subsequently to the marriage to prevent him from receiving any part of her estate. By the will of 1882, the estate was divided into four parts, three equal—the income of one equal part being given to Mrs. Maxwell under a separate use trust; by a codicil made in 1890, subsequent to Mrs. Maxwell's death, the share given her was given to James W. and Harry T. Friend in trust for her three children, with remainder to the survivors, if any died without issue before arriving at the age of twenty-five, and if all so died, with remainder to James W. and Harry T. Friend. As under the will admitted to probate the Maxwell children and Porter C. Friend's wife and child receive much less than under the codicil of 1890, it is evident that Mrs. Friend's feelings towards them had changed, but there is no evidence that this change was produced by undue influence.

The paper in dispute contains a provision relieving James W. Friend from accounting as trustee of the decedent, and it is alleged that he had conducted the business so that he was liable for breaches of the trust, and that he exercised undue influence over his mother to procure this provision for his protection. The trust business seems to have been managed as a family affair, not complying strictly with the rules of law, but it is not clear that it was conducted so as to make J. W. Friend liable. However, in one of the transactions complained of, Mrs. Friend herself made a profit of $10,000, and she certainly would not want that questioned. There had been a proceeding in court against her brother, Theodore Wood, who was her trustee under her father's will, with the result of which she was very much dissatisfied — thinking he had been harshly treated; and it appears from her declarations to J. W. Friend that she desired to protect him from trouble of that kind and made this provision for that purpose.

It also provides for the forfeiture of the share of any of the parties in interest who should contest her will. It appears from the testimony of H. T. Friend that this provision was made because she anticipated that Porter C. Friend would contest it.

Neither of these provisions, considering them from the point of view of the decedent, seems to be unreasonable; and the fact that James W. and Harry T. Friend were consulted about them would not justify the inference that they were the result of undue influence. Nor is there anything in the circumstances surrounding the preparation and execution of the will indicating it. William Bakewell, Esq., who prepared all of the testamentary papers made by decedent, testified that it was prepared from instructions received from her, his impression being that they were in a letter; that he sent the will to her, and that she subsequently brought it to the office of Mr. Jackson, president of the Fidelity Title and Trust Company; that he there wrote a short addendum to the will, and that it was signed by her and witnessed by him, Dr. McClelland and Mr. Jackson.

Although the evidence shows that James W. Friend is a forceful man, with strong will power, it also shows that his mother was no weakling, but a woman of strong mind and will.

If the burden of proof be upon the contestant, we are clearly of the opinion that, under all the evidence, a verdict against the will could not be sustained. If, however, it be upon the proponent, any presumption of undue influence as to the provision made for Porter C. Friend is rebutted by his own evidence, showing that there were reasons for the discrimination against him. And, as a will may be partially sustained (Rudy v. Ulrich, 69 Pa. 183; Griffin's Estate, 9 Pa. Dist. Rep. 248), a verdict in his favor could not stand. But as to the Maxwell children and Porter C. Friend's wife and child, the evidence does not show why the provisions in the will in dispute are less favorable to them than they were in the testamentary paper of 1890. And as to them, if the burden be upon the proponents, a verdict in their favor might perhaps be sustained. They, however, although made parties to the proceedings, have not joined in this appeal, and do not request an issue.

This appeal must therefore be dismissed and the request for an issue refused.

VOL. CXCVIII—24

*Error assigned* was decree, dismissing appeal.

*S. B. Schoyer,* with him *S. Schoyer, Jr., J. R. Sterrett* and *H. K. Siebeneck,* for appellant.—The evidence produced on behalf of appellant shows the existence of every one of the facts necessary to raise the presumption of undue influence and shift the burden of appellees under the rule of law laid down in Miller's Est., 179 Pa. 653, Wilson v. Mitchell, 101 Pa. 495, and Armor's Est., 154 Pa. 517.

If the burden of proof be upon appellant to show undue influence, he has assumed that burden and produced that which would justify a jury in finding a verdict against the will: Herster v. Herster, 116 Pa. 625; Miller's Est., 179 Pa. 645; Montgomery Web Co. v. Dienelt, 133 Pa. 585.

The court below erred in finding as a conclusion of law that in the absence of testimony tending to show that the mental faculties of the testatrix were impaired, the burden of sustaining the will would not be cast upon a son standing in a confidential relation who received a large portion of the estate, and that therefore the burden of proof in this case was on appellant: Caldwell v. Anderson, 104 Pa. 199; Scattergood v. Kirk, 195 Pa. 195; Logan's Est., 195 Pa. 282; Coleman's Est., 185 Pa. 437.

Even if there be no evidence of mental impairment, yet where susceptibility to influence is shown to exist as a substantive fact, either by evidence of implicit reliance upon the confidential advisor or a dominancy or ascendency on the part of such advisor, and a subservience to him on the part of the testatrix or otherwise, then the presumption of undue influence will arise equally as in case where there is evidence of mental impairment: Miller v. Miller, 187 Pa. 572; Caldwell v. Anderson, 104 Pa. 199; Yardley v. Cuthbertson, 108 Pa. 395; Jones v. Simpson, 171 Mass. 474; Higginbotham v. Higginbotham, 106 Ala. 314; Herster v. Herster, 122 Pa. 239; Rivard v. Rivard, 109 Mich. 98; Whitelaw's Exr. v. Sims, 90 Va. 588; In re Wheeler's Will, 25 N. Y. Supp. 313; Tyrrell v. Painton, L. R. Probate Div. (1894) 151.

*Edwin W. Smith* and *James H. Reed,* with them *P. C. Knox,* for appellee.—There was no sufficient evidence of mental im-

pairment on the part of testatrix to go to the jury: Wilson v. Mitchell, 101 Pa. 495.

In the absence of evidence of mental impairment, there could be no presumption of undue influence on the part of a son receiving a large share of the decedent's estate, and therefore the burden of proof was on appellant: Coleman's Est., 185 Pa. 437; Caldwell v. Anderson, 104 Pa. 206; Logan's Est., 195 Pa. 282; Scattergood v. Kirk, 195 Pa. 195; Trost v. Dingler, 118 Pa. 259; Loeser's Est., 167 Pa. 498; Pensyl's Est., 157 Pa. 465; Zimmerman v. Zimmerman, 23 Pa. 375; Blume v. Hartman, 115 Pa. 37; Miller's Est., 179 Pa. 645.

Even if the burden of disproving undue influence were on appellee, it has been met by the evidence of appellant himself that his drinking habits constituted a reason for the discrimination against him.

There was not sufficient evidence of undue influence to warrant an issue devisavit vel non: Tawney v. Long, 76 Pa. 115; Miller v. Oestrich, 157 Pa. 264; Harvey's Est., 181 Pa. 207; Yorke's Est., 185 Pa. 61.

PER CURIAM, January 7, 1901:

We have examined with care the testimony in this case to ascertain whether the appellant's claim is supported by it, and entitles him to the issue called for in his petition. It plainly appears in the evidence that the testamentary capacity of the decedent was unimpaired when she executed the will in question. That she was a person of more than ordinary firmness and will power, and that she possessed these qualities while she lived, is also apparent in the testimony. It was not a characteristic of her nature to allow her children to dominate or influence her against her best judgment.

On due consideration of the testimony, and of the clear and satisfactory opinion of the learned judge of the orphans' court, we affirm the decision of the register and dismiss the appeal at the costs of the appellant.