Tate v. Camp.

HUGH M. TATE *et al. v.* GEORGE M. CAMP *et al.*[*]

(*Knoxville.* September Term, 1922.)

1. **WILLS.** Provision for forfeiture of bequest of legatee who contests will not void as against public policy.

Provision of will providing for the forfeiture of bequest of legatee who contests will *held* not void as against public policy. (*Post, p.* 146.)

Cases cited and approved: Thompson v. Gaut, 82 Tenn., 313; Williams v. Williams, 83 Tenn., 438; Rouse v. Branch, Ann. Cas., 1913E, 1296; South Norwalk Trust Co. v. St. John et al., 92 Conn., 168.

2. **WILLS.** Legatee held to have entered into contest of will within forfeiture provision.

Legatee who filed a petition of contest when will was offered for probate in the county court, and who had the record certified to the circuit court for a hearing on the issue of *devisavit vel non*, and who filed a bill in the chancery court for the appointment of a receiver to manage the estate pending hearing as to the validity of the will, *held* to have entered into the contest of the will within the provision forfeiting the interest of any legatee "who shall enter any contest of this will," though the contest proceedings were dismissed and a compromise entered into before the issues had been formulated. (*Post, p.* 146.)

Cases cited and approved: Re Hite, 155 Cal., 436; Re Bergland, 5 A. L. R., 1370; Donegan v. Wade, 70 Ala., 501.

---

[*]On effect of provision in a will that beneficiary who contests the instrument shall forfeit his interest, is discussed in notes 68 L. R. A. 447; 21 L. R. A. (N. S.) 953 and 39 L. R. A. (N. S.) 1160.

As to what constitutes contest or attempt to defeat will within provision thereof forfeiting share of contesting beneficiary, see note in 5 A. L. R. 1370.

Tate v. Camp.

3. **WILLS.** Legatee's interest not forfeited under forfeiture provision where contest prosecutd in good faith and for probable cause.

Interest of legatee will not be forfeited under provision for forfeiture of interest of legatee who contests will, where contest was prosecuted in good faith and on probable cause. (*Post, p.* 146.)

Cases cited and approved: Jackson v. Westerfield, 61 How. Pr. (N. Y.), 399; Chew's Appeal, 45 Pa., 228; In re Owens (Pa.), 32 Pittsb. Leg. J. (N. S.), 257; In re Miller, 156 Cal., 119; Moran v. Moran, 144 Iowa, 451; Bradford v. Bradford, 19 Ohio St., 546; Kayhart v. Whitehead, 77 N. J. Eq., 12; In re Kathan, 141 N. Y. Supp., 705; Friend's Estate, 198 Pa., 363; Fifield v. Van Wyck, 94 Va., 557; Matter of Arrowsmith, 162 App. Div., 623; Thompson v. Gaut, 82 Tenn., 310; In re Hite, 155 Cal., 436; Hoit v. Hoit, 42 N. J. Eq., 388; Massie v. Massie, 54 Tex. Civ. App., 617; Smithsonian Inst. v. Meech, 169 U. S., 398; Black v. Herring, 79 Md., 146.

Cases cited and distinguished: In re Friend, 209 Pa., 442; South Norwalk Trust Co. v. St. John et al., 92 Conn., 168.

4. **WILLS.** Son held to have had probable cause for contesting father's will, and interest will not be forfeited under forfeiture provision.

Where only child had devoted his life to his father's business interests, had worked for a meager salary, was on the best of terms with father, and where two previous to execution of contested will father had executed another will leaving the son practically all of his estate, and at time of execution of contested will the father was eighty-one years of age and in poor health and was living with a niece who with her son were made principal beneficiaries in the contested will, and where such contest was settled by the niece and her son relinquishing more than half of the amount given them in the will, a legacy given to the son will not be forfeited under provision for forfeiture of interest of any one who contested will by reason of the son's contest thereof on the ground of mental incapacity and undue influence on the part of the niece and her son, and on the ground that he had worked for a nominal salary for the father for twenty years on father's agreement to devise to him the whole of his property; the son

Tate v. Camp.

having had probable cause for entering the contest. (*Post, pp.* 156, 157.)

5. **APPEAL AND ERROR.** **Portion of decree not appealed from cannot be changed on appeal.**

Where chancellor in action to construe will ordered fee of guardian *ad litem* for minor defendants to be paid out of the funds of the estate, but no appeal was taken from such portion of the decree by any of the parties, the appellate court cannot order such fee paid out of the estate of the minors. (*Post, p.* 157.)

FROM KNOX.

Appeal from the Chancery Court of Knox County.— HON. CHARLES HAYS BROWN, Chancellor.

CATES, SMITH, TATE & LONG, for plaintiffs.

LINDSAY, YOUNG & YOUNG, for defendants.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This bill in this cause was filed on June 28, 1921, by Hugh M. Tate and Eugene C. Fretz, executors of the will of E. C. Camp, against George M. Camp, Jewel C. Fretz, Eugene C. Fretz, as an individual, and Lois Alene Camp and E. C. Camp, minors, for the purpose of having the court construe a certain provision in the will of E. C. Camp, deceased, and to have the court determine whether or not the defendant George M. Camp, a beneficiary under said will, had forfeited his interest under said will.

The clause in said will, which it is sought to have construed, and under which it is claimed the forfeiture applied, reads as follows:

"I have not overlooked any one to whom, under all the circumstances, I think I should have made a bequest, and if any person or persons to whom I have herein made bequests shall enter any contest of this will, upon any ground whatsoever, such person or persons shall forfeit and lose the provision made for them, and what they would have taken shall fall back to my estate and pass under the residuary clause of this will."

The bill was answered by the adult defendants, and James M. Meek was regularly appointed guardian *ad litem* for the minor defendants and answered for them. Said guardian *ad litem,* on behalf of his wards, is contesting the right of their father, G. M. Camp, to take under said will upon the ground that he has forfeited his right thereto by having entered a contest for the purpose of determining the validity of said will.

It appears from the pleadings and decrees, exhibited with the bill, that, when the will in question was offered in the county court of Knox county for probate, the defendant G. M. Camp filed a petition of contest, and had the record certified to the circuit court of Knox county for a hearing upon the issue of *devisavit vel non.* He also filed a bill in the chancery court of Knox county for the purpose of having a receiver appointed, and one was appointed, pursuant thereto, for the purpose of taking charge of and managing the estate of E. C. Camp pending a hearing as to the validity of his will.

While the case was thus pending in the circuit court, but before the issues had been formulated, the matters involved were compromised, the contest proceedings dismissed, and the will was then probated in solemn form.

The cause was heard on the pleadings, the exhibits thereto, and the following agreed statement of facts, to-wit:

"Statement of Facts.

"Filed May 5, 1922.

"In the above-styled cause, the following facts are hereby stipulated and agreed upon in order to save cost and facilitate the preparation and hearing of the cause, to-wit:

"I. That the allegations of complainants' bill are true in so far as it undertakes to set forth the facts, and the exhibits to said bill are true copies of the documents and records of which they purport to be copies.

"II. That E. C. Camp died at his home in Knoxville, Tenn., on the 21st day of November, 1920, at the age of eighty-one years; that he had been in feeble health for several months before his death.

"III. That on the 23d day of April, 1920, the said E. C. Camp executed a will, copy of which is filed as an exhibit to the bill in this cause, and that said will was found among his valuable papers after his death.

"IV. That Jewel C. Fretz was a niece of E. C. Camp, and that she and her son, Eugene C. Fretz, were living in the home of the said E. C. Camp at the time of his death, and had been making their home with him for seven years, and that they are two of the beneficiaries mentioned in said will of April 23, 1920.

"V. That the defendant George M. Camp is a son of the said E. C. Camp, and was at the time of the death of his father his only heir.

"VI. The defendant George M. Camp had been working for the Coal Creek Coal Company at its mines, located in Anderson county, Tenn., thirty years, since 1890; that during the first ten years he worked at everything from a common laborer up to weighmaster and shipping clerk, and his wages ranged from $1 a day up to $40 a month;

that in the year 1900 he was made general manager of said mines and held this position for seventeen years, or up until 1917; that his duties as such general manager gave him general supervision over all of the work at the mines, especially the getting out and shipping of coal; that his salary for the first four or five years was at the rate of $1,000 per annum, and for the next four years it was at the rate of $1,200 per annum, and from 1910 to 1917 at the rate of $1,800 per annum; that in 1917 the Coal Creek Leasing Company was formed, which leased all of the mines of the Coal Creek Coal Company and operated them under a contract to load the coal on the cars at a stipulated price; and the said George M. Camp became president of said leasing company, and at the same time he was made general sales manager of the coal for said Coal Creek Coal Company, at a salary of $600 per annum, which position he held up to the time of the death of his father, E. C. Camp; that the capital stock of said Coal Creek Coal Company, organized prior to 1870, was $200,000; that E. C. Camp owned more than one-half of said capital stock; that said company each year, with the exception of the years 1903 and 1904, paid dividends, never less than eight per cent and ranged from that to a little more than twenty-five per cent. per annum and averaged more than twelve per cent. per annum; that the said E. C. Camp, as president of said company, drew a salary as such ranging from $3,000 to $5,000 per annum; that the duties he performed as president of said company during the last ten years of his life were merely nominal.

"VII. That the business and social relations between E. C. Camp and the son, the defendant George M. Camp, were always of the most cordial and friendly nature.

"VIII. That the said G. M. Camp never had for the last twenty-five years sufficient income, aside from his salary and income from the Coal Creek Company, to pay the taxes and upkeep on his other property.

"IX. That the said E. C. Camp, on the 22d day of June, 1918, two years and five months before his death, made a will, and in said will E. C. Camp gave to his only son and heir, George M. Camp, all of his property of every kind and description, but directed that his executors pay over to Mrs. Jewel C. Fretz the sum of $15,000 and to the said Eugene C. Fretz the sum of $10,000, and to charity for the period of five years $1,000 per annum (a true copy of which, made from the stenographer's office carbon copy thereof, is filed herewith as Exhibit A to this agreement).

"X. That under the will, dated April 23, 1920, the estate of the said E. C. Camp was disposed of in value as follows:

"To his son, the defendant George M. Camp, $26,800; to the children of defendant George M. Camp, Lois A. and E. C. Camp, $64,400; total devised to his son, George M. Camp, and children, $91,280. To Mrs. C. C. Gamble, widow of his deceased son Ed Camp, $13,000. To William and Mary Camp, children of his brother Henry N. Camp, $11,000. To Edna and Gene Camp, daughters of his brother Fred Camp, $16,000. To his brother James H. Camp and his daughter Edna, $17,350. To John Mallory Camp and Horace Camp, children of Mallory Camp and grandchildren of James H. Camp, $16,000. To Mrs. Jewel C. Fretz, daughter of James H. Camp, and her son Eugene C. Fretz, $221,435; total amount bequeathed to Mrs. Jewel C. Fretz, her son Eugene C. Fretz, her father James H. Camp, and her sister Edna, and to John Mallory and Horace Camp, sons of her brother Mallory Camp, $264,-785.

"XI. That when said will was offered for probate the defendant George M. Camp objected to said will being probated with a view to contesting the same, on the alleged grounds: First, that at the date of the making of said will his father, E. C. Camp, was not mentally capable of disposing of his property. Second, because the said Mrs. Jewel C. Fretz and Eugene C. Fretz, by the exercise of undue influence procured him to make said will. And, third, because in consideration of his working for the Coal Creek Coal Company for the last twenty years for a nominal salary he was, by agreement to heir, at his father's death the whole of his property.

"XII. That before any pleadings were made, upon looking into a contest of said will, the said George M. Camp and said Mrs. Jewel C. Fretz and Eugene C. Fretz entered into an agreement by the terms of which all bequests in said will, except those to George M. Camp and Mrs. Jewel C. Fretz and Eugene C. Fretz, were left undisturbed, and they divided the property which had been devised to them so that George M. Camp took property of the value of.$164,-715, and Mrs. Jewel C. Fretz and her son, Eugene C. Fretz, took property valued at $83,600.

"XIII. That under said will as offered for probate the defendant George M. Camp and his two children would have taken property of the value of $91,280; that under the settlement made between George M. Camp and the said Mrs. Jewel C. Fretz and Eugene C. Fretz, the value of the property taken by George M. Camp and his two children combined amounted to $229,115; that in said adjustment Mrs. Jewel C. Fretz and Eugene C. Fretz, who had jointly been given $221,435 by said will, accepted property valued at $83,600 and gave up to George M. Camp the remainder of $137,835.

"XIV.   That defendant George M. Camp only has two children, the defendants Lois and E. C. Camp; that Lois Camp will be twenty-one years old on the 23d day of June, 1922, and that she has filed her answer in this cause, in which she does not express any preference as to whether a forfeiture be declared; but it is agreed that she does not seek a forfeiture of her father's interest under said will; that in the event a forfeiture should be declared of the interest bequeathed to the said George M. Camp one-half would go to the children of the said George M. Camp and the other one-half to the said Jewel C. Fretz and Eugene C. Fretz, and the said Jewel C. Fretz and Eugene C. Fretz are not asking that a forfeiture be declared, but, on the other hand, they are disclaiming any desire that such forfeiture be declared.

"XV.   That the values of the various properties mentioned in said will have been arrived at and determined in the following manner, to wit:

"All the properties bequeathed to Mrs. Jewel C. Fretz and Eugene C. Fretz, and George M. Camp, were auctioned off to the highest bidder to said three parties, with the agreement and understanding that each party should be charged with the value as fixed by his bid on each piece of property bid in by him, and the value as to the other properties was determined by an appraisal by disinterested competent real estate men of the city of Knoxville.

"XVI.   That Lois and E. C. Camp, daughters of George M. Camp, reside with their father and mother and have always lived with them since their birth, and that they are being supported and educated by their father, the defendant George M. Camp, and that each member of said household entertains and has toward every other member the most kind and affectionate feeling.

"XVII. That George M. Camp is a good business man whose services were worth largely more than he was paid by the Coal Creek Coal Company.

LINDSAY, YOUNG & YOUNG,

"Sols. for GEO. M. CAMP.

JAMES M. MEEK,

Gdn. *ad Litem* for MINORS."

The record presents four questions for decision.

1. Is a forfeiture provision, of the character here involved, void as against public policy?

The decisions are practically unanimous in holding such provisions valid. *Thompson* v. *Gaut,* 14 Lea, 313 *Williams* v. *Williams,* 15 Lea, 438; 40 Cyc., 1705; 2 Redfield on Wills, 679; 2 Jarman on Wills, 682; notes to *Rouse* v. *Branch,* Ann Cas., 1913E, 1296; *South Norwalk Trust Co.* v. *St. John et al.,* 92 Conn., 168, 101 Atl., 961, Ann. Cas., 1918E 1090.

2. Did the action of the defendant G. M. Camp in the premises constitute a "contest" as that term is used in the will?

The question must be answered in the affirmative. The language used is, "which enter any contest of this will." The defendant G. M. Camp did enter a contest. *Re Hite,* 155 Cal., 436, 101 Pac., 443, 21 L. R. A. (N. S.), 953, 17 Ann. Cas., 993; *South Norwalk Trust Co.* v. *St. John et al., supra; note to Re Bergland,* 5 A. L. R., 1370; *Donegan* v. *Wade,* 70 Ala., 501.

3. Should the court make an exception to the rule sustaining forfeitures where the contest was prosecuted in good faith and upon probable cause?

This is a question about which the courts are in conflict, and one which had not heretofore been adjudicated by this court.

Mr. Schouler, in his recent work on Wills (1915), 605, says:

"Modern wills seek, in some instances, to prevent litigation, by forbidding the beneficiaries named to dispute the will. The law on this point is likely to be more firmly settled hereafter than it is at present. To exclude all contest of the probate on reasonable ground that the testator was insane or unduly influenced when he made it is to intrench fraud and coercion more securely; and public policy should not concede that a legatee, no matter what ground of litigation existed, must forfeit his legacy if the will is finally admitted. As for construction proceedings, the testator's own language may have rendered them necessary. On the other hand, while the probate of the disputed will does not conclude that there was no just cause for opposing it, the testator's last wishes are authenticated as he expressed them; and both in probate and construction proceedings, all speculative and heartless litigation, by which so many estates have been wasted, may well be discountenanced. No arbitrary rule meets well the cases likely to arise under this head, but circumstances ought to influence the construction.

"The English rule applied to legacies seems the true one; namely, to treat a condition not to dispute the will as *in terrorem,* and void for being against sound policy, wherever it appears that the legatee had probable cause for contesting the validity or effect of the will, though not otherwise. And if the maxim is a just one, it ought to avail as well in a devise; and generally, unless, perhaps, the language of the particular gift and circumstances require the restraint to be interpreted as a strict condition precedent. But Mr. Jarman shows that this doctrine has

been denied where lands were concerned, and even inti-
mates that the *in terrorem* of such conditions where perconn-
alty is given has no greater force than in the permitted re-
straints of marriage; so that a gift over of the legacy, upon
a breach, will make the condition good.

"In this country the question appears still an open one,
though decisions bearing upon the point may already be
found. All clauses or provisions of this character should
at least be construed as strictly as possible, being penal in
their operations. In some States the *bona-fide* inquiry
whether a will was procured through fraud or undue in-
fluence is certainly not to be stifled by any prohibition con-
tained in the instrument itself. But in other States such
conditions are pronounced valid, both as to real and per-
sonal property. So far as needless testamentary construc-
tion is concerned, or an attempt to impeach the title to
what is given under the will and invite contests on tech-
nical points, or any unfair probate contest, the operation
of a condition not to litigate may be fairly favored."

Pritchard on Wills & Administration, section 342, says:
"It is obvious to remark that the policy of enforcing for-
feitures conditioned on contesting wills is doubtful where
the ground of contest is undue influence alleged to have
been exerted over the testator, thus enabling the person
guilty of the fraud to protect it from exposure by insert-
ing the prohibitory clause."

In 40 Cyc., 1705, the author says: "A condition in a will
that a gift shall be void in case the beneficiary shall dispute
the will is a condition subsequent; and generally condi-
tions of this sort are regarded as valid, particularly when
there is a limitation over. But in some jurisdictions such
a condition has been held inoperative where the opposition

was made in good faith and on probable grounds."—citing *Jackson* v. *Westerfield,* 61 How. Pr. (N. Y.), 399; *In re Friend,* 209 Pa., 442, 58 Atl., 853, 68 L. R. A., 447 and note, 9 Prob. Rep. Ann., 425; *Chew's Appeal,* 45 Pa., 228; *In re Owens* (Pa.), 32 Pittsb. Leg. J. (N. S.), 257. *Contra, In re Miller,* 156 Cal., 119, 103 Pac., 842, 23 L. R. A. (N. S.), 868; *Moran* v. *Moran,* 144 Iowa, 451, 123 N. W., 202, 30 L. R. A. (N. S.), 898.

Upon this question the authorities in England seem to be much in conflict. There have been but few decisions in the United States. Those supporting the forfeiture rule, without admiting any exception, are as follows: *Bradford* v. *Bradford,* 19 Ohio St., 546, 2 Am. Rep., 419; *Kayhart* v. *Whitehead,* 77 N. J. Eq., 12, 76 Atl., 241, affirmed in 78 N. J. Eq., 580, 81 Atl., 1133; *In re Miller,* 156 Cal., 119, 103 Pac., 842, 23 L. R. A. (N. S.), 868; *Moran* v. *Moran,* 144 Iowa, 451, 123 N. W., 202, 30 L. R. A. (N. S.), 898.

The decisions in the cases just referred to are based upon the idea that a failure to enforce the forfeiture would be to thwart the intention of the testator, and would tend to encourage litigation in families. But if the testator were insane, or unduly influenced, then the instrument would not be his will, and hence his intention would not be defeated.

The cases that make an exception where "probable cause" exists are as follows: *In re Friend,* 209 Pa., 442, 58 Atl., 853; 68 L. R. A., 447; *In re Kathan* (Sur.), 141 N. Y. Supp., 705; *Rouse* v. *Branch,* supra; *South Norwalk Trust Co.* v. *St. John et al.,* supra.

The reasoning of these latter cases announces a more equitable and just rule, and meets with our approval.

In *Rouse* v. *Branch,* supra, the contest was based upon the allegation that the will was forged. The court sus-

tained the will as valid, but declined to enforce a forfeiture. The court said:

"No case has been cited, and we do not believe any can be found, sustaining the proposition, that a devisee or legatee, shall not have the right, upon probable cause, to show that a will is a forgery, without incurring the penalty, of forfeiting the estate given him by the will. The right of a contestant to institute judicial proceedings upon probable cause, to ascertain whether the will was ever executed by the apparent testator, is founded upon justice and morality. If a devisee should accept the fruits of the crime of forgery, under the belief, and upon probable cause, that it was forgery he would thereby become morally a *particeps criminis;* and yet if he is unwilling to commit this moral crime, he is confronted with the alternative of doing so, or of taking the risk of losing all, under the will, in case it should be found not to be a forgery.

"Public policy forbids that he should be tempted in such a manner. This is far more obnoxious to public policy, than a condition in the will against marriage."

*In re Friend,* supra, the court said: "By the second clause of her will, the testatrix gave to the Fidelity Title & Trust Company of Pittsburg, the sum of $20,000 to be held in trust for her son, Porter C. Friend. She had two other sons, James W. and Henry T. The sixth clause of her will is: 'If any of my children, or grandchildren, or any of the *cestuis que trust* under this my will, shall contest the validity of this my will, or attempt to vacate the same, or alter or change any of the provisions thereof, he, or she, or they, shall be thereby deprived of any beneficial interest under this will and of any share of my estate, and the share, or shares, of such person or persons, shall be divided

equally between my said sons, James W. Friend and Harry T. Friend, discharged from any trust.'

"Porter C. Friend appealed from the decree of the register of wills admitting his mother's will to probate, and petitioned the orphan's court of Allegheney county for an issue *devisavit vel non,* on the ground that his brother James W. had procured the execution of it by undue influence. This petition was dismissed by that court, and on appeal to us, its decree, was affirmed. *Friend's Estate,* 198 Pa., 363, 47 Atl., 1106. The appellants thereupon insisted that their brother, in view of the clause referred to in their mother's will, was not entitled to what she had left him, and now ask that the $20,000, with the accrued interest, be awarded to them. Their contention was not sustained by the court below, which, in an opinion by its learned Presiding Judge, held that, as Porter C., the son, had probable cause of instituting the proceedings to contest the will, he had not forfeited the interest which his mother gave him in her estate.

"It is not to be questioned that it was competent for the testatrix, possessing the absolute power to dispose of what she possessed just as she pleased, to impose the condition upon which the appellants rely in asking that their brother shall be deprived of all interest in her estate; and it is equally clear, in view of his attempt to annul her will, that the burden is upon him to show that he now ought to have what it gives him. Such conditions to testamentary gifts and devises are universally recognized as valid; and, by some courts, enforceable without exception. The better rule, however, seems to us to be that the penalty of forfeiture of the gift or devise ought not to be imposed when it clearly appears that the contest to have the will set

aside was justified under the circumstances, and was not a mere vexatious act of a disappointed child or next of kin. A different rule—an unbending one—that in no case shall an unsuccessful contestant of a will escape the penalty of forfeiture of the interest given him, would sometimes not only work manifest injustice, but accomplish results that no rational testator would ever contemplate. This is manifest on a moment's reflection, and is illustrated by the class of cases to which the one now before us belongs, in which there is an allegation of undue influence which procured the execution of the will. If, as a matter of fact, undue influence is successfully exerted over one about to execute a will, that same influence will have written into it a clause which will make sure its disposition of the alleged testator's property. He who will take advantage of his power to unduly influence another in the execution of a will will artfully have a care to have inserted in it a clause to shut off all inquiry as to the influence which really made the will; and, if the rule invoked by the appellants is to be applied with no case excepted from it, those who unscrupulously play upon the feelings of the testator may, with impunity, enjoy the fruits of their iniquity, and laugh in scorn at those whom they have wronged.

"If the condition of forfeiture is to be enforced in every case, those who improperly influence the testator may boast to a child against whom he discriminated of the power they exerted over him, and of what they were able to accomplish for themselves, taunting and goading on such child to a contest; and yet, in the end, those who so invited it, and whose conduct made it justifiable, succeeded in sustaining the will by retracting or denying what they said, the contestant will not only be deprived of his gift or

devise, but those who drew him into the contest may acquire his portion as part of their own plunder."

In *South Norwalk Trust Co.* v. *St. John et al.*, supra, the court said : "In England, the action to secure a legacy could be had in the ecclesiastical courts, where the rule of the civil law prevailed, in which a fiction had been adopted that, unless there was a gift over of such a legacy, no forfeiture would be decreed. The English court of equity accepted this rule, and enforced it as to legacies of personal property, but not as to devises of land. It was early pointed out by American text-writers and jurists that there was no substantial ground for any distinction in this respect between real and personal estate, and that the exception was purely an artificial one, and unsupported by any adequate reason. Some few of the American courts have adopted the English view, although in some instances recognizing that the exception is not based on any satisfactory reason. *Fifield* v. *Van Wyck,* 94 Va., 557, 563, 27 S. E., 446, 64 Am. St. Rep., 745; *In re Friend,* 209 Pa. St., 442, 446, 58 Atl., 853; *Matter of Arrowsmith,* 162 App. Div., 623, 628, 147 N. Y. S., 1016. The great majority of the American courts have repudiated this exception. *Bradford* v. *Bradford,* 19 Ohio St., 546, 547, 2 Am. Rep., 419; *Moran* v. *Moran,* 144 Ia., 451, 462, 123 N. W., 202; *Thompson* v. *Gaut,* 14 Lea (Tenn.), 310, 315; *In re Hite,* 155 Cal., 436, 445, 17 Ann. Cas., 993, 101 Pac., 443, 21 L. R. A. (N. S.), 953; *Donegan* v. *Wade,* 70 Ala., 501; *Hoit* v. *Hoit,* 42 N. J. Eq., 388, 7 Atl., 856, 59 Am. Rep. ,43; *Massie* v. *Massie,* 54 Tex. Civ. App., 617, 118 S. W., 219; *Smithsonian Inst.* v. *Meech,* 169 U. S., 398, 413, 18 S. Ct., 396, 42 U. S. (L. Ed.), 793. Most of these authorities support a condition of forfeiture without recognizing any exception.

Their underlying principle is, that since the testator may attach any condition to his gift which is not violative of law or public policy, the legatee must either take the gift with its conditions or reject it.  The disposition of these authorities has been to sustain forfeiture clauses as a method of preventing will contests, which so often breed family antagonisms and expose family secrets better left untold, and result in a waste of estates through expensive and long drawn-out litigation.

"The children suggest the possible approval of this exception, based on the failure to provide for a gift over, but the trustee omits reference to it.  The trustee relies upon the appeal being one to secure the construction of the will, rather than one to contest its validity.  And both trustee and children unite in urging upon us, as an exception to the rule of forfeiture, the exception that if reasonable cause exist for the contest, a forfeiture will not be decreed.  And they further urge that a forfeiture has been waived by them through their acquiescence in the execution of the will.

"One of the claimed exceptions to the general rule of forfeiture is not an exception.  If the action of a legatee is merely one to determine the true construction of the will, or of any of its parts, the action could not be held to breach the ordinary forfeiture clause, for the object of the action is not to make void the will, or any of its parts, but to ascertain its true legal meaning.  *Black* v. *Herring,* 79 Md., 146, 152, 28 Atl., 1063; 1 Schouler on Wills (5th Ed.), section 605.  The appeal taken from the decree of the court of probate did not, as we have before pointed out, raise the question of the construction of this will.

"The exception that a contest for which there is a rea-

Tate v. Camp.

sonable ground will not work a forfeiture, stands upon bet-
ter ground. It is quite likely true that the authorities of
greater number refuse to accept this exception, but we
think it has behind it the better reason. It rests upon a
sound public policy. The law prescribes who may make a
will and how it shall be made; and it must be executed in
a named mode, by a person having testamentary capacity
and acting freely, and not under undue influence. The law
is vitally interested in having property transmitted by will
under these conditions, and none others. Courts cannot
know whether a will, good on its face, was made in con-
formity to statutory requirements, whether the testator
was of sound mind, and whether the will was the product
of undue influence, unless these matters are presented in
court; and those only who have an interest in the will, will
have the disposition to lay the facts before the court. If
they are forced to remain silent, upon penalty of forfeiture
of a legacy or devise given them by the will, the court will
be prevented by the command of the testator from ascer-
taining the truth; and the devolution of property will be
had in a manner against both statutory and common law.
Courts exist to ascertain the truth and to apply the law
to it in any given situation; and a right of devolution which
enables a testator to shut the door of truth and prevent the
observance of the law, is a mistaken public policy. If, on
contest, the will would have been held invalid, the literal
interpretation of the forfeiture provision has suppressed
the truth and impeded the true course of justice. If the
will should be held valid, no harm has been done through
the contest, except the delay and the attendant expense.

"Where the contest has not been made in good faith, and
upon probable cause and reasonable justification, the for-

feiture should be given full operative effect. Where the contrary appears, the legatee ought not to forfeit his legacy. He has been engaged in helping the court to ascertain whether the instrument purporting to be the will of the testator is such. The contest will not defeat the valid will, but it may, as it ought, the invalid will. The effect of broadly interpreting a forfeiture clause as barring all contests on penalty of forfeiture, whether made on probable cause or not, will furnish those who would profit by a will procured by undue influence, or made by one lacking testamentary capacity, with a helpful cover for their wrongful designs.

"The practical difficulties following this exception are more apparent than real. Contests will be made only in causes where they are justified. Doubtful cases will not invite a forfeiture. There will be no more burden put upon the court in finding the fact of probable cause than in finding similar facts in other classes of cases."

4. Does the record disclose that the defendant G. M. Camp had probable cause for entering a contest?

We think so. He was the only child. He had devoted his life to his father's business interest, working for a meager salary. He and his father were on the best of terms. Only two years previous, his father had executed another will leaving him practically all of his estate. When the will in question was written, the testator was eighty-one years of age and in poor health. He was living with Mrs. Fretz and her son. Upon the institution of the contest proceedings, those charged with the exercise of undue influence relinquished $138,000 of the $221,000 given them in the will. These facts abundantly show that G. M. Camp had probable cause for instituting the contest.

Tate v. Camp.

The views of the chancellor and that of the court of civil appeals accord with the conclusions herein expressed, and their decrees will therefore be affirmed.

5. The guardian *ad litem* for the minor defendants was allowed a fee of $300 by the chancellor, which was ordered paid out of the funds of the estate.

This feature of the decree was not appealed from by any of the parties, and we cannot, therefore, order this fee paid out of the estate of the minors.

The decree of the court of civil appeals will be in all things affirmed, and costs of this appeal will be paid out of the funds of the estate of E. C. Camp.