## Ryan's Estate

*George A. Butler* and *William Linton,* for appellants.
*Abraham Friedman,* for appellee.

STEARNE, J., December 4, 1936.—These are exceptions to the action of a hearing judge in declining to award an issue devisavit vel non upon the single charge of undue influence.

Decedent left surviving a widow and 11 adult children. He was 67 years of age and died of cancer of the stomach. His mentality remained unimpaired. The will was prepared by a reputable member of this bar, who had been the attorney for decedent for many years, and who was the warm personal friend of both decedent and his wife. Instructions for the preparation of the instrument were given by decedent to the lawyer in the presence of the wife. The wife signed as one of the witnesses, both to the executed rough draft of the will and to the completed typewritten instrument thereafter executed. The son, who is charged with the exertion of undue influence, had nothing to do with securing the execution of the will.

Under the terms of the will decedent bequeathed to each of nine named children legacies of $500, and to another child a legacy of $100; he devised two pieces of real estate to his son John, although the son already had title thereto; he also gave John his undertaking business, which gift was qualified by the proviso that should John predecease the wife then the business should be hers. The residue was given to John and the lawyer was named executor of the will.

Curiously enough, no one complains concerning the bequest of the business to the son. The widow concedes that this was proper. However, the real controversy arises over the fact that the son John, in the father's lifetime, had succeeded in obtaining possession of substantially every item of property, both real and personal,

which the father owned. This included mortgages, bank accounts and real estate. The most amazing thing is that in addition to these assets John secured a judgment note for $25,000, executed by his father and mother, and upon which the father paid John interest until shortly before his death. These transactions covered a period of approximately 10 years prior to the death, and are detailed in the voluminous testimony and discussed in the opinion filed.

According to the inventory and supplemental inventory in our court records, the personal estate in possession of the executor amounts to $7,087.42, and no real estate. The unpaid debts of decedent, according to the executor, total $3,481.40; the legacies bequeathed amount to $4,600. Debts and legacies total $8,081.40, with only $7,087.42 to pay them. Upon the surface, therefore, the residuary estate has no value, and John, by the will itself, gains no advantage except as to the business, concerning which there is no quarrel. However, if the will should be held to be invalid, and decedent decreed to have died intestate, and if all the alleged fraudulent inter vivos transfers are set aside, then, of course, there would exist a res in which the widow and all the children would share according to the provisions of the intestate law. But the single inquiry is: Did John Ryan, decedent's son, obtain this will through the exercise of undue influence?

In considering filial influences the attitude of the law is that contestant must establish, beyond mere suspicion and belief, that the child exerted such influence over the parent as would prevent free play of testator's judgment and discretion, and substitute that of the child: Robinson v. Robinson, 203 Pa. 400; Aggas v. Munnell et al., 302 Pa. 78. Where the charge is that undue influence has been exerted on a strong and free mind, nothing short of direct, clear and convincing proof of fraud or coercion will avail: Llewellyn's Estate, 296 Pa. 74.

From a review of all the testimony it seems most extraordinary, despite the added feeling of sympathy and

affection which testator exhibited toward this son due to the son's lameness, in which the father evidently played a part, as well as the apparent business sagacity and attention which the son displayed, that such a strong-minded father should have permitted the son gradually to acquire his entire substance. It is suggested that the father confidently anticipated that his eldest son, upon the father's death, would assume the patriarchal position of the father and care for the entire family. Whatever may have been the real motive back of these inter vivos transfers, it now rests with the testator and the conscience of his son John. If such transfers were in truth and in fact fraudulent, then the fraud must be proven. Conjecture and suspicion do not take the place of testimony: Wanamaker's Estate, 8 D. & C. 569, 576. And, even if such inter vivos transfers were fraudulent and void, the orphans' court would have no jurisdiction to decide this question, because the property was not in fact in decedent's possession at the time of his death, nor was it ever in the hands of the fiduciary: McGovern's Estate. 322 Pa. 379.

The hearing judge was reluctant to decide in favor of the son who, although only one of testator's 11 children, succeeded, inter vivos, in acquiring substantially testator's whole estate. Such reluctance was accentuated when it was observed that the son had so departed from his filial duty as actually to issue an attachment execution against his own mother's real estate, based upon a note in which she joined and which was given to the son. We heartily share this view.

But the court is bound by the proven facts and by the law applicable thereto. We may not resort to conjecture and suspicion in lieu of testimony. It is conceded that the will was prepared by testator's own attorney, who was his warm personal friend. There is not the slightest intimation that the son induced the execution of the testamentary document. It is true that the son did suggest to testator that the size of the estate would not warrant

$1,000 legacies to the children, whereupon decedent reduced them to $500. But, as hereinbefore indicated, due to decedent's inter vivos transfers this statement by the son was true. It is a rule of law that where one occupies a confidential relation, and the hearing judge so found, the burden rests upon the confidant to disprove exertion of undue influence: Phillips' Estate, 244 Pa. 35. But this rule does not apply in cases of blood relationship, unless the element of weakened physical and mental condition is injected: Blume v. Hartman, 115 Pa. 32; Friend's Estate, 198 Pa. 363. But this testator possessed an unimpaired, if not a vigorous, mind. No fraud, coercion or undue influence was proven, and none may be inferred. There was no inference of importunity on the part of the son. We are in accord with the hearing judge that, under the proofs submitted, no burden rested upon the son to disprove undue influence, but, if it had, the son sufficiently met the burden. A verdict against the will would not be permitted to stand.

Upon the findings of fact of the hearing judge, and on the authorities cited and for the reasons assigned by him, all exceptions are dismissed.