Gregory C. KRUG, individually and as a partner of Krug Investments; and as a beneficiary of the Eleanor Baron Krug Q–Tip Trust, Krug Family Trust, Carol E. Krug 1988 Trust, and the Carol E. Krug 1974 Trust, Plaintiff,

v.

AMBROSE, WILSON, GRIMM & DURAND, William C. Wilson, Paul T. Coleman, and Valley Fidelity Bank & Trust Company, Defendants.

No. CIV 3–91–0350.

United States District Court,
E.D. Tennessee,
at Knoxville.

May 5, 1992.

A. Philip Lomonaco, Knoxville, TN, for plaintiff. (Mr. Lomonaco later withdrew and Mr. Krug appeared pro se.) (Complaint was filed on June 10, 1991.).

Stephen C. Daves, O'Neil, Parker & Williamson, Knoxville, TN, for Ambrose, Wilson, Grimm and Durand, and William C. Wilson.

Courtney N. Pearre, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Knoxville, TN, for Paul T. Coleman.

## MEMORANDUM OPINION

JORDAN, District Judge.

This civil action came on for a hearing on Friday, May 1, 1992 on the defendant Paul T. Coleman's motion to dismiss or, in the alternative, for summary judgment [doc. 23], and his motion for sanctions under Fed.R.Civ.P. 11 [doc. 22]. The court has considered the material filed in support of and in opposition to these motions, and heard the arguments of counsel. The court makes the following findings and conclusions.

The plaintiff filed his initial complaint [doc. 1] on June 10, 1991. Jurisdiction is asserted on the basis of diversity of citizenship. The plaintiff says that he formed the Krug Investments partnership with his father, the late George C. Krug, in 1984; that his father died in July, 1988, which made the plaintiff a successor trustee of the George C. Krug Trust, his mother being the other trustee; and that in 1988, he, individually, as a partner in Krug Investments, and as a trustee of the George C. Krug Trust, retained the defendants Ambrose, Wilson and Mr. Wilson individually as attorneys to render advice concerning certain partnership and trust matters.

The plaintiff alleges that the defendants Ambrose, Wilson and Mr. Wilson individually (Mr. Wilson is a partner in this law firm) committed professional malpractice in several ways. First, he says that they failed to advise him of a requirement that he register, in his capacity as a co-trustee of the George C. Krug Trust, with the Tennessee Secretary of State as a nonresident fiduciary. Second, he says that these defendants were negligent in their advice concerning the George C. Krug Trust agreement, because it turned out that an arbitration clause in the trust agreement was not sufficient to prevent costly litigation seeking the dissolution of the partnership. The plaintiff says that he expressed to these defendants at the outset of the representation his and his late father's desires to avoid this result.

Third, the plaintiff says that Ambrose, Wilson and Mr. Wilson engaged in a conflict of interest by representing Eleanor B. Krug in litigation in the Knox County, Tennessee Chancery Court in which the plaintiff and Krug Investments were named as defendants, and in which the dissolution of this partnership was sought.

In their answer [doc. 9], Ambrose, Wilson and Mr. Wilson say that the plaintiff was a partner in Krug Investments and a remainder beneficiary of the George C. Krug Trust; that upon the death of George C. Krug, the plaintiff and his mother, Eleanor B. Krug, became co-trustees of this trust, but that the mother had the discretion under the trust instrument to remove the plaintiff as a trustee; that the plaintiff never retained these attorneys as counsel for him individually, and that the plaintiff was never these defendants' client; and that the plaintiff did not seek advice from these defendants concerning his obligations as a nonresident fiduciary. Ambrose, Wilson and Mr. Wilson deny all allegations of professional malpractice made against them. These defendants admit that they were counsel for the plaintiffs in *Eleanor B. Krug, Individually and as Trustee of the Eleanor Barron Krug Revocable Trust and Eleanor B. Krug and Valley Fidelity Bank and Trust Company, Co–Trustees of the George Krug Trust v. Gregory C. Krug, Krug Investments, and Morgan, Keegan & Co., Inc.*, in the Knox County, Tennessee Chancery Court.

On November 15, 1991, with the court's permission, the plaintiff filed his amended

complaint, by which he added Paul T. Coleman and Valley Fidelity Bank & Trust Company as defendants in this civil action. In his amended complaint, the plaintiff states a third cause of action, in addition to those for professional malpractice and conflict of interest stated against the two original defendants, against all defendants, including Mr. Coleman as a former partner in Ambrose, Wilson, and Valley Fidelity as receiver of Krug Investments and co-trustee of the various trusts established by George C. Krug. However, the plaintiff seeks only declaratory relief against and discovery from Valley Fidelity, and so has waived for the time being any requirement that Valley Fidelity respond to his complaint.

The plaintiff's third cause of action is for the recovery of all attorney fees paid by the George C. Krug Trust to Ambrose, Wilson, Mr. Wilson, or Mr. Coleman, or to any firm in which either Mr. Wilson or Mr. Coleman have or had any interest. The plaintiff also seeks to have the trustees of the George C. Krug Trust directed not to pay any more fees to these persons or law firms in privity with them. The plaintiff relies upon an *in terrorem* provision in his late father's will:

> SEVENTH: I hereby revoke any devise, legacy or *benefit* given by this Will or in the Trust referred to in Article THIRD above to each heir of mine or *other persons,* who directly or indirectly either singularly or in conjunction with *any other person or persons* contest or seek to secure the revocation of probate of this Will, or who attacks or seeks to impair or invalidate any of the provisions of this will or such Trust, and as to such devise, legacy and *benefits* so revoked this Will and such Trust shall be executed and carried into effect as if such heir and/or *person* had predeceased me and left no issue of his or her own surviving him or her.

(Emphasis in the quotation in the amended complaint.)

To support this cause of action, the plaintiff alleges in his amended complaint that Eleanor B. Krug wished to finance her purchase of a residence in Knoxville with trust funds; that Mr. Wilson as Ms. Krug's attorney threatened to remove the plaintiff as a co-trustee if he did not agree to this transaction; that the plaintiff then acquiesced, "[s]olely to avoid inter-family (sic) litigation;" that when the plaintiff refused to agree to allow the Eleanor Baron Krug Q–Tip Trust to purchase this residence, Eleanor B. Krug, on Mr. Wilson's advice, withdrew $250,000.00 of Krug Investments' money from an account with Morgan, Keegan & Co.; that after the plaintiff instructed Morgan, Keegan & Co. to seize back these funds, Eleanor B. Krug, on Mr. Wilson's advice, removed the plaintiff as a co-trustee of the George C. Krug Trust and replaced him with Valley Fidelity; and that the plaintiff and his mother then reached a settlement under which the Knoxville residence would be acquired by the Eleanor B. Krug Revocable Trust, in large part with money borrowed from the Eleanor Baron Krug Q–Tip Trust, the plaintiff would be restored to the status of co-trustee, and the plaintiff would acquire his mother's residence in Louisville at "fair appraisal."

The plaintiff goes on to say that his mother did not enter into this settlement agreement in good faith, but instead planned to remove him again as a co-trustee upon the acquisition of the Knoxville residence; that the parties believed the Louisville residence was worth $465,000.00, but that appraisals showed it to be worth only $275,000.00; that the plaintiff offered to purchase it for the appraised value, and Mr. Wilson counteroffered on behalf of Eleanor B. Krug to sell it for $375,000.00, and suggested that if the plaintiff increased his offer, it might prevent his removal from the position of co-trustee of the George C. Krug Trust; that Eleanor B. Krug did so remove the plaintiff; and that when the plaintiff questioned the validity of this removal, the lawsuit against him filed by Eleanor B. Krug and Valley Fidelity in the Knox County Chancery Court ensued.

The plaintiff says that while this chancery suit was pending, the defendant Mr. Coleman, acting as counsel for the plaintiff Ms. Krug, made a settlement proposal which would have, if accepted, "completely destroyed [the plaintiff's father's] Estate Plan" and "severely impaired" the trusts created by the father. This, the plaintiff says, violated the *in terrorem* testamentary clause quot-

ed above, with the result that the attorneys who were paid fees by the George C. Krug Trust must pay back these "benefits." The plaintiff says also that the fees charged for the work of Mr. Wilson and Mr. Coleman were unreasonable and excessive.

As for his theory concerning the *in terrorem* clause, the plaintiff says in his amended complaint,

Plaintiff asserts his position in Count III with a reasonable belief for recovery. Plaintiff admits the theory for recovery is novel and research has provided no guidelines or cases on point. However, Plaintiff believes that the facts and circumstances of this particular case, when taken in the context of the Testator's knowledge, experience and wishes, will demonstrate that Plaintiff's Complaint and demand are well founded and not proffered to harrass (sic), delay or unduly burden any party.

The defendant Mr. Coleman's stated grounds for his motions to dismiss or for summary judgment, and for sanctions, are that the testamentary *in terrorem* clause has nothing to do with the payment of any attorney fees to any firm in which Mr. Coleman has worked as an attorney; that Mr. Coleman has not personally billed any fees to any of these trusts, and has not individually been paid by any of them (which is supported by Mr. Coleman's affidavit [doc. 24]); that because the plaintiff seeks a mandatory injunction preventing the George C. Krug Trust from paying any more attorney fees, his complaint should be dismissed for failure to ask for such an injunction against the co-trustees of this trust, First Tennessee Bank (successor in interest to Valley Fidelity) and Eleanor B. Krug, the second of whom is not even named as a defendant in this civil action; that no cause of action can be based upon the settlement proposal communicated by Mr. Coleman, in light of the inadmissibility of the proposal into evidence; and that the plaintiff's claim for relief against the defendant Mr. Coleman is barred by *res judicata* or collateral estoppel, because in the chancery suit, a cause of action in the plaintiff's counterclaim that Eleanor B. Krug and Valley Fidelity were not entitled to pay their attorneys' fees from any of the George C. Krug

trusts was dismissed with prejudice (which is established by certified copies of papers from the chancery suit, attached to Mr. Coleman's affidavit [doc. 24]).

The plaintiff's response [doc. 30A] to this defendant's motions is not supported by any citation to case law, except with respect to the issues of *res judicata* and collateral estoppel. The plaintiff cites no authority to support his argument based upon the *in terrorem* clause; he says that Mr. Coleman benefitted from fees paid to one or both of his law firms, regardless of whether any of these trusts made any direct payment to him; that the indispensable parties argument concerning the failure to sue the co-trustees of the George C. Krug Trust fails because an injunction against First Tennessee Bank would conclude the issue, given that the pertinent trust instrument requires unanimity between the co-trustees; that the inadmissibility of a settlement offer to prove any fact admitted in making the offer does not preclude the existence of a cause of action based upon the offer; and that there is neither identity of issues nor of parties between this litigation and the chancery suit.

■  One argument made by counsel for the plaintiff at the hearing on these motions must be addressed first. The plaintiff moved to amend his complaint on September 17, 1991 [doc. 10]. The defendants Ambrose, Wilson and Mr. Wilson resisted the amendment [doc. 12], arguing that the addition of defendants sued on a theory other than the malpractice and conflict of interest claims stated against the original defendants would cause unnecessary confusion. These defendants argued also that the issues which the plaintiff was seeking to litigate by his amended complaint had been "raised as somewhat of a collateral issue" in the chancery suit in the Tennessee court, and that principles of *res judicata* and collateral estoppel should be held to bar the amendment. Ambrose, Wilson and Mr. Wilson also advised the court of some of the other litigation involving the same or related parties which is pending in Tennessee and California courts, and argued that the amendment would compound the harassment effected by this other litigation.

As the transcript of the court's November 14, 1991 hearing on this motion to amend [doc. 20] indicates, the main concern of the original defendants with respect to the amendment was possible confusion of the jury by the different theories of recovery against them and Mr. Coleman, particularly in light of the fact that the theory of recovery against Mr. Coleman involves estate and trust matters not usually submitted to juries. The court was constrained by the law under Fed.R.Civ.P. 15, which requires liberality in allowing such amendments, to allow this one, and noted that a severance of the claims stated in the amendment for separate trial without a jury might turn out to be appropriate.

The transcript also contains the following:

*THE COURT*: All right. Now, let's give [the plaintiff] the benefit of the doubt, as I am required to do under the federal rules. What's wrong with letting him file his amended complaint? You are coming up with, from your response, with some defenses already, saying that it's res judicata or collateral estoppel.

*MR. DAVES*: Right.

*THE COURT*: And if that's the case and the plaintiff is coming in here with his eyes wide open, and he knows what's over in chancery court in Knox County. I do not know. I only know what you filed here. And having been a chancellor, I know there's a lot more in that file that I haven't seen.

*MR. DAVES*: It's a lot. It's a lot, right.

*THE COURT*: Yes. When that's all pressed down, shaken out, if there's nothing there, then, as far as I'm concerned, the plaintiff might be treading on Rule 11 sanctions. You appreciate that, Mr. Lomonaco?

*MR. LOMONACO*: Your Honor, I appreciate that.

The court cannot, therefore, be argued to be foreclosed from granting either of the motions under consideration merely because it allowed the amendment. The court expressly left open the possibility that the claim against Mr. Coleman stated in the amendment might be held to be meritless, and the possibility that prosecution of the claim might be held to be sanctionable. Furthermore, the unfairness of prohibiting Mr. Coleman from litigating these issues because other defendants raised them before he was in the case is obvious.

■ Turning to Mr. Coleman's argument that the *in terrorem* clause cannot supply the cause of action advanced by the plaintiff, counsel for the plaintiff admitted both in his amendment to the plaintiff's complaint and at the November 14 hearing that he has been unable to find any authority to support his theory. The court's independent research has also not found any. The court concludes that this testamentary provision does not apply to attorney fees paid by the George C. Krug estate or by any trust established by this deceased settlor.

The leading Tennessee case concerning forfeiture or *in terrorem* clauses like the one in issue is *Tate v. Camp*, 147 Tenn. 137, 245 S.W. 839 (1922). The clause in that case read,

I have not overlooked any one to whom, under all the circumstances, I think I should have made a bequest, and if any person or persons to whom I have herein made bequests shall enter any contest of this will, upon any ground whatsoever, such person or persons shall forfeit and lose the provision made for them, and what they would have taken shall fall back to my estate and pass under the residuary clause of this will.

The Tennessee Supreme Court refused to enforce the clause against a son who had contested his father's will on the grounds of incompetence and undue influence, where the contest was made in good faith and with probable cause to believe in the existence of a ground or grounds upon which to hold the will invalid.

In some of the authorities quoted with approval by the Tennessee court, the courts noted that strict enforcement of such clauses would empower those guilty of undue influence to silence their adversaries and to prevent courts from discovering the truth. The Tennessee Supreme Court also cited authority for the rule that a proceeding for con-

struction of a will is not a contest for the purpose of such clauses, because one who seeks construction is seeking only to give effect to the testator's true intent. The court quoted with approval from a 1915 treatise on wills by a Mr. Schouler: "All clauses or provisions of this character should at least be construed as strictly as possible, being penal in their operations."

Application of this law to the facts of the case at bar suggests at least two reasons why the plaintiff's theory of recovery against Mr. Coleman is deficient. First, none of the litigation in which Mr. Coleman was involved as counsel was a contest of the late Mr. Krug's will. There was no contention made by Mr. Coleman's clients in any of the papers which have been shown to this court that this testator's will or any of the trusts which he created was invalid for any reason.

Second, contrary to the plaintiff's creative reading of the clause in issue, it cannot be construed as broad enough to reach fees paid to attorneys or other professional persons. The plaintiff tries to make much of the fact that the forfeiture clause upon which he relies revokes "any devise, legacy or benefit," reading benefit as broadly as possible, but the word in this context is more reasonably construed to refer to any testamentary gift which is not, strictly speaking, a devise (gift of real property) or a legacy (gift of cash), such as a bequest or a gift of a power of appointment.

As for the use of the phrase "each heir of mine or other persons," not every beneficiary of a testamentary gift is necessarily the testator's heirs. Furthermore, the language could have been chosen to account for, for example, an assignee of a legatee's anticipated testamentary gift. It is not necessary to read the late Mr. Krug's will to extend the reach of this *in terrorem* clause to attorneys, and, it being unnecessary, the court will not adopt such a reading in the face of the narrow construction of such clauses mandated by *Tate v. Camp, supra.*

There is, furthermore, a serious reason of public policy why the plaintiff's reading of the clause in issue should not be adopted. A trustee of a trust being entitled to have reasonable attorneys' fees for necessary advice and litigation paid out of the trust estate, *see Vaccaro v. Cicalla,* 89 Tenn. 63, 14 S.W. 43 (1890), it follows that a chancery court is authorized to allow the payment of such fees out of the trust estate. The plaintiff's construction of this forfeiture clause, if adopted, would enable testators and settlors of trusts to force trustees into a Hobson's choice between entering into litigation, even in good faith and with probable cause to believe it justified, financed out of the trustees' own pockets, and declining litigation in all events. It would also leave trustees' attorneys always unsure whether they might have to refund fees properly earned. The court cannot sanction such a closing of courthouse doors to civil litigants in justified as well as unjustified litigation.

■ It is plain from what the court has stated here that it is unnecessary to address the other arguments raised in support of and in opposition to the motions under consideration. However, the court must note briefly another reason in support of dismissal of the plaintiff's claim against Mr. Coleman, which is related to this defendant's indispensable parties argument. It is apparent from what has been submitted to the court that the plaintiff is seeking to force Mr. Coleman to reimburse fees paid to Mr. Coleman or to one or both of his law firms by one or more of the George C. Krug trusts. It is equally apparent that any fee which was excessive or otherwise not properly earned should be reimbursed to the trust which paid it, not to the plaintiff, who is merely one of the beneficiaries of these trusts. Therefore, regardless of whether declaratory or injunctive relief against Valley Fidelity (or its successor in interest) might obviate the need to sue the co-trustee of the George C. Krug Trust, Eleanor B. Krug, the plaintiff lacks standing to seek any such relief.

■ The plaintiff's theory of recovery against the defendant Mr. Coleman in this civil action is not warranted by existing law or by a good faith argument for the extension, modification, or reversal of such law, to use the language of Fed.R.Civ.P. 11. The court reaches this conclusion after consideration of this matter in accordance with the

objective standard required by the rule. In such circumstances, the rule mandates the imposition of some sanction. *See Smith v. Detroit Federation of Teachers, Local 231,* 829 F.2d 1370, 1379–80 (6th Cir.1987).

The court finds that an appropriate sanction in this case is to require the plaintiff and his attorney, jointly and severally, to pay the reasonable attorney's fee and costs, if any, charged for the appearance of counsel for Mr. Coleman at the hearing held by the court on Mr. Coleman's motions.

For the reasons stated in this memorandum opinion, and in accordance with it, the court will dismiss the plaintiff's claim against Paul T. Coleman in this civil action, and will award sanctions in favor of this defendant against the plaintiff and his attorney.

### ORDER

For the reasons stated in the court's memorandum opinion filed simultaneously with this order, the court finds the defendant Paul T. Coleman's motion to dismiss, or, in the alternative, for summary judgment [doc. 23] well taken, and it is **GRANTED**. It is **ORDERED** that the plaintiff's claim for relief against this defendant in this civil action is **DISMISSED.**

The court likewise finds this defendant's motion for sanctions under Fed.R.Civ.P. 11 [doc. 22] well taken, and it is **GRANTED.** The court will award sanctions in favor of the defendant Paul T. Coleman against the plaintiff and the plaintiff's counsel, jointly and severally, in the amount of the reasonable attorney's fee and costs, if any, charged for the appearance of counsel for this defendant at the hearing held in this civil action on Friday, May 1, 1992. Counsel for the defendant Mr. Coleman is directed to file, and to serve copies of, a statement of this fee and costs, if any.